1  CHRIS BAKER, State Bar No. 181557
   cbaker@bakerlp.com
2  MICHAEL CURTIS, State Bar No. 252392
   mcurtis@.bakerlp.com
3  BAKER CURTIS & SCHWARTZ, P.C.
   1 California Street, Suite 1250
4  San Francisco, CA 94111
   Telephone: (415) 433-1064
5  Facsimile: (415) 366-2525
6
7  Attorney for Plaintiff
   CAMERON ROSETTA
8
9           IN THE UNITED STATES DISTRICT COURT
10         FOR THE CENTRAL DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| 12  CAMERON ROSETTA (on behalf of himself and all others similar situated), | Case No.  2:19-cv-8994 |
| 13                               Plaintiff, | **CLASS ACTION** |
| 14          vs. | **CAUSES OF ACTION** |
| 15 | 1.  OVERTIME |
| 16  PAYCOM SOFTWARE, INC. and PAYCOM PAYROLL, LLC, | 2. WAITING TIME PENALTIES |
| 17                               Defendants. | 3. FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS |
| 18 | 4-8. DECLARATORY JUDGMENT/INJUNCTIVE RELIEF |
| 19 | |
| 20 | 9. UNFAIR BUSINESS PRACTICES |
| 21 | 10. PAGA (upon amendment) |
| 22 | |
| 23 | **DEMAND FOR A JURY TRIAL** |
| 24 | |

25
26
27
28

Plaintiff Cameron Rosetta ("Plaintiff") complains as follows:

## INTRODUCTION

1.    Plaintiff brings this action against Defendants Paycom Software, Inc. and Paycom Payroll, LLC (collectively "Paycom") for damages, restitution, disgorgement, penalties, declaratory judgment, an injunction, and other appropriate relief.   As detailed below, Paycom treats its California-based "sales professionals" as exempt from California's overtime laws.  They are not.  In addition, Paycom's other employment practices violate numerous provisions of California statutory, common, and constitutional law.  Among other things, Paycom requires all of its California-based employees to sign and comply with agreements and policies that violate their right to privacy and that contain illegal forum selection, release, indemnity, non-disclosure, non-disparagement, non-compete, and non-solicitation requirements.

2.    Through this Complaint, Plaintiff asserts class and individual claims.  As a matter of right, Plaintiff will amend this Complaint to allege additional claims under the Private Attorneys General Act of 2004 ("PAGA"), Labor Code § 2698 *et seq*., upon the expiration of the appropriate notice periods.

## PARTIES

3.    From December 2018 through April 2019, Plaintiff Cameron Rosetta worked as a Sales Professional for Paycom in Los Angeles, California.  Paycom was Plaintiff's second job out of college.  Plaintiff's work, job duties, and terms and conditions of employment (as described below) were similar to all other Sales Professionals.

4.    Paycom Software, Inc. is a publicly-traded human resources company headquartered in Oklahoma City, Oklahoma.  It provides recruiting, payroll, human resources, and talent management services to other companies.  Among other things, Paycom provides a "human capital management" solution for "Managing Employees from Recruitment to Retirement."  As of December 31, 2018, Paycom Software, Inc. had at least 3,050 employees across the United States.  One of these employees was Plaintiff.  Paycom Software described Plaintiff as its employee when requiring him to sign and comply with Paycom Software's standardized Code of Ethics & Business Conduct and Insider Trading Policy.  On information and

- 1 -

belief, all putative class members were and are required to sign these standardized policies as employees of Paycom Software, Inc.

5.    Paycom Payroll, LLC is a direct or indirect subsidiary of Paycom Software. Paycom Payroll is described as Plaintiff's employer in Plaintiff's wage statements.  As a condition of employment, Plaintiff was required to sign and comply with (among other things): Paycom Payroll's standardized: (1) Employee Video, Photo, and Recording Release and Waiver; (2) Non-Solicitation Agreement, and (3) Employee Confidentiality, Non-Disparagement, Non-Disclosure, Proprietary Information and Indemnification Agreement.  On information and belief, all putative class members were required to sign these standardized agreements as employees of Paycom Payroll.

6.    On information and belief, Paycom Payroll and Paycom Software share officers, directors, facilities (including the same headquarters), property, employees, and control of labor relations.  Paycom Software and Paycom Payroll constitute either a single employer, integrated enterprise, or joint employers of Plaintiff and the putative class members.

7.    At all times mentioned herein, Paycom Software and Paycom Payroll were the agents or representatives of each other, were acting with the knowledge and consent of each other, and within the purpose and scope of their agency or representation in doing or failing to do the things alleged in this Complaint.

## JURISDICTION & VENUE

8.    This Court has diversity jurisdiction of this civil action pursuant to 28 U.S.C. § 1332.  Plaintiff is a California resident.  Paycom's principal place of business is Oklahoma and Paycom is incorporated in Delaware.

## FACTS

### The Sales Professionals

9.    Paycom focuses on selling its products and services to clients with between 50 to 50,000 employees.  It seeks to increase its client base within existing and additional markets through centralized and aggressive sales efforts.  Paycom has multiple sales offices that are typically staffed with one sales team, with each team comprised of a sales manager and

approximately six to eight "Sales Professionals."  These Sales Professionals work in inside sales, field sales, and as client relations representatives.

10.    Paycom recruits its captive sales force primarily from colleges and universities. (In other words, this is the Sales Professionals' first or second job out of college).  Paycom's management of its sales force is, by necessity, uniform, regimented and centralized.

11.    Paycom currently has one or more sales offices in, at a minimum, the following California cities/metropolitan areas: (1) San Francisco; (2) Silicon Valley; (3) Sacramento; (4) Pasadena; (5) Los Angeles; (6) Orange County, and (7) San Diego.  Sales Professionals also regularly work from their homes ("home offices").

12.    By design, Paycom experiences high turnover in its sales force.  For example, the Pasadena office where Plaintiff worked, experienced more than 50% turnover in its office in the four months during which Plaintiff was employed.  On information and belief, this turnover rate is consistent with Paycom's other California locations.

13.    Accordingly, and on information and belief, there are more than 200 putative class members in the Classes.

### *The Training Program*

14.    Paycom requires all Sales Professionals to attend an intensive eight-week training program.  This training program includes, but is not limited to, instruction in accounting, business metrics, application features, and tax matters relevant to Paycom's actual or potential customers. Time spent on the training program during this eight-week period is at least four hours each day, four days a week.  When not engaged in the training program during this eight-week period, Sales Professionals spend the remainder of their time engaged in cold calling and office work.  They rarely, if at all, leave their sales or home offices for the purpose of engaging in outside sales.

15.    During the eight-week training program, Sales Professionals work daily and weekly overtime.  They typically start the day between 7:00 and 8:00 a.m., and end the day after 6:00 p.m.

16.    Sales Professionals are not paid overtime during this eight-week training period.

*Job Duties*

17.     Following the eight-week training program, and as an ordinary part of their job, Sales Professionals worked (and work) daily and weekly overtime.  Paycom expects its Sales Professionals to arrive at the sales office between 7:00 and 8:00 a.m., leave the sales office after 6:00, and continue working into the night at their home offices.

18.     All Sales Professionals in California report up to the same sales executive.  All Sales Professionals engage in similar job duties that include attending in-office meetings, participating in continuous training (or "In Progress Training"), cold calling prospects and clients, researching prospects and clients, data entry concerning prospects and clients, paperwork, client retention, meeting preparation, and gaining experience and understanding of Paycom's products and services.    Indeed, Paycom's standard "competencies" for Sales Professionals focus almost exclusively on prospecting for and cold calling potential or existing customers.

19.     Paycom does not expect its Sales Professionals to spend more than 50% of their time outside the office engaged in sales activity.  Rather, Paycom expects its Sales Professionals to spend the majority of their working time at their sales or home offices.  Sales Professionals are closely supervised.

20.     Thus, for example, two days every week (e.g., Mondays and Fridays), Paycom expects its employees to work at the sales office during the day and their home office at night. One day a week (e.g., Tuesdays), Paycom expects its employees to work at least half the business day in the sales office and their home office during the evening and night.  Two other days a week (e.g., Wednesdays and Thursdays), Paycom states employees should spend the business day (between 9:00 and 5:00) outside the sales office, but does not reasonably expect them to do so. Instead, Paycom expects its Sales Professionals to work at their sales or home offices in the mornings, evenings, and at night (doing data entry and otherwise), as well as when no outside meetings were scheduled.

21.     Paycom is fully aware that its Sales Professionals work daily and weekly overtime. It permits and encourages them to do so.

22.     Sales Professionals are not paid overtime at any time during their employment.

*Wage Statements*

23.    In addition, the wage statements that are generated by Paycom for Sales Professionals are inaccurate.  They contain either no information or inaccurate information about hours worked and hourly rates.  Sales Professionals, through an examination of the wage statements alone, cannot determine the accuracy of their pay.

**Employment Policies and Agreements**

24.    "Work" typically involves the exchange of labor for wages and benefits.  Paycom, however, demands much more than labor from its employees.  Paycom demands, in exchange for wages and benefits, that employees also surrender to Paycom their constitutional right to privacy, their right to compete, their right to whistle blow, their right to speak, their right to bring future claims, their right to indemnity, and numerous other unwaivable rights.   Paycom does this through a number of adhesion contracts, policies and practices that employees must agree and comply with as a condition of, and in consideration for, employment.  These agreement, policies, and practices are illegal.  More specifically:

*The Likeness Waiver*

25.    Paycom has and maintains a policy of requiring employees to sign, as a condition of, and in consideration for, employment, an "Employee, Video, Photo and Recording Release Waiver" ("the Likeness Waiver").

26.    This Likeness Waiver is, by its terms, a condition of employment with Paycom and must be signed "in consideration for" employment with Paycom.

27.    Through this Likeness Waiver, Paycom's employees must:

a.    "consent to the recording, use, and reuse by Paycom and/or any of its respective licensees, assigns, parents, subsidiaries, or affiliated entities, and each of the respective employees, agents, officers, and directors (collectively, the "Releasees") of [the employee's] voice (including, without limitation, [the employee's] speaking and singing voices and any musical compositions created by [the employee] and recorded by Paycom), actions, likeness, name, appearance, and biographical material (collectively "Likeness"). . . ."

- 5 -

b.      The employee must further agree that the Releasees may use, alter, or modify the employee's Likeness in <u>any</u> and <u>all</u> media, now known or <u>hereafter devised</u>, <u>worldwide</u> and <u>in perpetuity</u>.

c.      The employee must agree that Paycom shall have "full exclusive ownership of any video/audio, images, or recordings, or excerpts thereof, taken of [the employee] by Paycom ("Material")."

d.      The employee must agree that this "Material" may be "used in any manner or media without notifying the employee," "including <u>non-Company uses</u>" "<u>as well as for trade or commercial purposes.</u>"

e.      Employees must also agree to a future release of all claims related to the use or misuse of their likeness.  The Likeness Waiver states: "I release Releasees from any and all liability arising out of their use of my Likeness and/or Material.  I agree not to make any claim against Releasees as a result of the recording or use of my Likeness and/or the Material (including, without limitation, any claim that such use invades any right to privacy and/or publicity and any claims based on defamation or libel or false light). . . .  I release Paycom and its employees and agents . . . from any claims, damages, or liability which I may ever have in connection with the taking or use of the images, video/audio, printed material or Material used with the images."

28.      Thus, in order to work for Paycom, employees must give the company their voices, faces, actions, names, appearances, and biographical materials.  Employees must give up control of their likeness, world-wide and in perpetuity.  Employees' likenesses may be altered or modified in unflattering ways.  Their faces, actions, voice, and biographical material may be sold to small and large corporations and other entities for "trade or commercial purposes" (such as to improve facial recognition software, target advertisements, or to be included in data sets sold to companies for improved audio surveillance or machine learning).  Their faces or voices may end up on the internet or turned into memes.  Employees may be unwillingly converted into public figures even though they wish to remain private persons.

29.     As a result of the Likeness Waiver, employees, forever more, may be publicly affiliated with Paycom (or whomever else purchases their likeness from Paycom) in whatever way Paycom or the Releasees wish.  This is so even if employees want nothing to do with Paycom or the Releasees (because, for example, they were wrongfully terminated or the Releasees are bad actors).  Moreover, and as detailed below, employees are prohibited from even complaining about the misuse or abuse of their likeness because of Paycom's confidentiality and non-disparagement requirements.

30.     Plaintiff does not want Paycom to use, reuse, or sell his Likeness.

31.     On information and belief, and consistent with the terms of Likeness Waiver, Paycom unjustly profits from its employees' likenesses by selling their likenesses for non-Company, trade and commercial purposes.

32.     The Likeness Waiver further states it is governed by the laws of the State of Oklahoma.

### The Confidentiality, Non-Disparagement, and Indemnity Requirements

33.     Paycom also has and maintains a policy and practice of requiring employees to sign and/or comply with confidentiality requirements (including agreements and policies) that are prohibited by California law.  Paycom's confidentiality requirements are mind-boggling, and include the following:

### The Insider Trading Policy

34.     Paycom requires employees to sign and comply with an "Insider Trading Policy." This policy prohibits the use or disclosure of **any** "nonpublic information" that an employee acquires in the workplace or by virtue of their position with the company.  The policy further provides that **all** "nonpublic information relating to the Company is the property of the Company and the unauthorized disclosure of such information is forbidden."  "Nonpublic information" is defined as "information that has not been previously disclosed to the general public and is not otherwise available to the general public."  The Insider Trading policy contains no carve out for disclosing "nonpublic information" to government agencies (or others) about potential or actual violations of the law.

### The Code of Conduct

35.     Paycom also requires employees to sign and comply with its "Code of Ethics and Business Conduct for Officers, Directors and Employees."  This Code of Conduct states that employees may not disclose "'nonpublic' information to <u>anyone</u> outside the Company, including family members and friends," other than in accordance with Paycom's Insider Trading Policy. The Code of Conduct further states that employees "may not discuss the Company or its business in an internet "chat room" or similar internet-based forum, including social media sites." Moreover, in the event an employee is terminated, the employee must "surrender to the Company <u>all</u> papers, documents, writings and other property produced by you or coming into your possession by or through [the employee's] employment or <u>relating</u> to any proprietary information of the Company. . . ."  While the Code of Conduct prohibits retaliation against employees who provide "truthful information" to law enforcement or the SEC relating to the commission of a "<u>federal offense</u>" or a securities law violation, it does not explain that this information may include "non-public information."  The Code of Conduct does not permit the disclosure of information to <u>anyone</u> relating to potential or actual violations of the law that are <u>not</u> federal offenses or securities law violations.

### The Employee Handbook

36.     Paycom also requires employees to sign and comply with its Employee Handbook. The Handbook states that, except for certain executives, "no other employee may grant an interview concerning company business to any media outlet without express written permission from the Chief Marketing Officer."  Paycom further instructs employees that "all media inquiries and potential leads should be sent to a member of the Marketing Department."

### The Paycom NDA

37.     Paycom also requires employees to sign and comply with an "Employee Confidentiality, Non-Disparagement, Non-Disclosure, Proprietary Information and Indemnification Agreement" ("the Paycom NDA").

38.     The Paycom NDA (as well as the Paycom Handbook) defines "Confidential Information" to mean everything related to Paycom, even if it is clearly not confidential.  It also

prohibits employees from disclosing so-called "confidential information" to anyone, disclosing the very existence of confidential information, or disclosing their relationship with Paycom. For example:

        a.      The NDA states that "Confidential Information" means "**any** information and/or intellectual property, whether patented, trademarked, copyrighted, or **otherwise** . . . and expressly **includes**, without limitation: (1) customer names; (2) prospective customer contact information; (3) Paycom employee compensation, information, commission policies, bonus policies, and benefit policies; (4) Paycom employees' personally identifiable information;[1] (5) Paycom employees' performance information "where such information is used as a manner of gossip;" (6) Paycom's business processes; and/or (7) any and all other material nonpublic information with respect to any aspect of Paycom's business." The Paycom NDA further states that information in the public domain is still confidential unless the exact "combination" of the at-issue information is also publicly available.

        b.      The Paycom NDA provides that a Paycom Employee shall not "disclose to any third party or use for an unauthorized purpose any Confidential Information. Employee may use any Confidential Information only to the extent required to fulfill his/her role as an employee of Paycom and for no other uses or purposes." The NDA further prohibits the "reproduction" of so-called "Confidential Information."

        c.      The Paycom NDA also takes a page from the movie "Fight Club" and prohibits employees from disclosing that "Confidential Information" even exists. Rather, the Paycom NDA states that: "Employee shall not reveal that Confidential Information has been disclosed to Employee pursuant to this Agreement or that Employee is using or has any Confidential Information, without the prior written consent of Paycom."

        d.      The Paycom NDA further prohibits employees from saying they used to work there. Rather, the NDA states in pertinent part:

---

[1] Paycom's Handbook defines "personally identifiable information" as any data that could identify a specific individual, either alone or in combination with other personal or identifying information that is linked – or linkable – to a specific individual." Employee names, of course, are "personally identifiable information."

After Employee's employment with Paycom ceases and while selling or attempting to sell payroll and/or payroll-related services to third parties, <u>Employee shall not disclose to such third parties that Employee formerly worked at Paycom</u>.  This section 20 is specifically intended to include <u>a prohibition on Employee disclosing to third parties that he or she formerly worked for Paycom for purposes of holding himself or herself out as having expertise with respect to Paycom or Paycom's products or services. After Employee's employment with Paycom ceases, Employee shall not promote or market himself or herself on the internet as being formerly affiliated with Paycom</u>.

39.    In addition to its many confidentiality requirements, the Paycom NDA also prohibits employees from ever "disparaging" Paycom, or anyone <u>affiliated</u> with Paycom, in any way.  The NDA states:

Employee shall not make any statements (whether written, electronic, or verbal) to the general public or cause or encourage others to make any statements to the general public (whether written, electronic, or verbal) that defame or <u>disparage</u> the <u>personal</u> or <u>business</u> reputation, practices, or conduct of Paycom, its employees, directors, and officers.  Further, employees shall not engage in conduct that is designed to or that would have the effect of impugning or disparaging the <u>products</u> and <u>services</u> Paycom provides to its customers.  Employee acknowledges and agrees that this prohibition extends to statements (whether written, electronic, or verbal) made to <u>anyone</u>, including but not limited to, the news media, the internet, social media platforms, investors, potential investors, industry associations, competitors, vendors, employees (past and present) and/or customers. . . .  Employee shall not engage in any communications to the general public or any conduct that is designed to or that would have the effect of disparaging Paycom's business, Paycom's services or Paycom's officers, directors, or employees.

40.    The Paycom NDA does contain an ambiguous and ineffective "Notice of Immunity" under the federal Defend Trade Secret Act.  However, this notice, by its express terms, applies <u>only</u> to the Paycom NDA.  The Insider Trading Policy, Code of Conduct, and Employee Handbook contain no such notice.

41.    Following his employment with Paycom, and when looking for other work, Plaintiff felt (and continues to feel) constrained in what he can disclose about Paycom, his work at Paycom, and Paycom's employees, because of Paycom's confidentiality requirements.

1

<u>The Indemnity Provision in the Paycom NDA</u>

2

42.    The Paycom NDA also contains an "indemnity provision" that contradicts Labor

3

Code §§ 2802 and 2804.  Instead of indemnifying its employees, as required by law, Paycom

4

requires <u>employees</u> "to fully indemnify, hold harmless, and defend <u>Paycom</u> and its directors,

5

officers, employees, agents, stockholders, and affiliates (collectively "Indemnified Parties") for

6

and against <u>all</u> claims, demands, actions, suits, damages, liabilities, losses, settlements,

7

judgments, costs, and expenses, including reasonable attorneys fees and costs, <u>whether</u> involving

8

a third party claim, which <u>arises out of or relates to</u>" essentially, the employees' employment."

9

This is so regardless of whether or not the claim was "caused by the negligence of Paycom or any

10

other Indemnified Party and whether the relevant claim has merit."

11

43.    The Paycom NDA states it is governed by Oklahoma law and contains an

12

Oklahoma forum selection clause.

13

***

14

44.    Paycom threatens employees with termination and/or legal action if they fail to

15

comply with the Paycom NDA, Insider Trading Policy, Code of Conduct, or Employee

16

Handbook.

17

***The Non-Solicitation Agreement***

18

45.    Paycom also has and maintains a policy of requiring employees to sign, as a

19

condition of employment and continued employment, a "Non-Solicitation Agreement."

20

46.    The Non-Solicitation Agreement prohibits employees from directly or indirectly

21

soliciting Paycom's <u>customers</u>, <u>prospective customers</u>, or <u>referral sources</u> <u>in any way</u> for twelve

22

months following the termination of the employees' employment.

23

47.    The Non-Solicitation Agreement also prohibits employees from directly or

24

indirectly soliciting Paycom's <u>employees</u> in any way for twelve months following the termination

25

of the employees' employment.  It also prohibits employees from providing <u>any</u> information to

26

<u>any one</u> that pertains to Paycom's employees.  The Non-Solicitation Agreement states:

27

28

COMPLAINT AGAINST PAYCOM

During the term of Employee's Employment and for an additional period of twelve (12) months following the termination of Employee's employment with Paycom, whether such termination is by Paycom or by Employee, for any reason, <u>Employee shall not provide any information pertaining to Paycom's employees to any subsequent employer or any person</u>, and/or Employee shall not assist any subsequent employer or any person in any manner with any solicitation, inducement or attempt to induce any employee of Paycom to leave his/her employment with Paycom.

48.     Plaintiff feels (and continues to feel) constrained in what he can say about his former Paycom co-workers, to his new employer and otherwise, because of Paycom's non-solicitation agreement.

49     Like the Likeness Waiver and Paycom NDA, the Non-Solicitation Agreement states that it is governed by the laws of the State of Oklahoma and contains an Oklahoma forum selection clause.

### *Paycom's Knowledge*

50.     Paycom is well-aware that its employment practices violate California law.  First, Paycom is presumed to know the law.  In addition, Paycom is in the business of providing human resources products and services to California employers, including a "time and attendance application" and a "government and compliance application" that Paycom states will "reduce exposure to violations, audits, and penalties with respect to the employment laws impacting their business."  Indeed, knowledge of California law is essential to Paycom's business model.  As it explained in one SEC filing: "Any failure to educate and assist our clients with respect to new or revised legislation that impacts them could have an adverse effect on our reputation, and any failure to modify our applications or develop new applications in a timely fashion in response to regulatory changes could have an adverse effect on our business and results of operations."  Consistent with its business need to know the law, Paycom publishes an extensive public "blog" in which it discusses in detail the compliance requirements of employers in California and elsewhere.

51.     Paycom's refusal to comply with California law with respect to its own employees is willful, knowing and inexcusable.

**CLASS ALLEGATIONS**

51.    Plaintiff brings this action on behalf of the following Classes.

**Rule 23(b)(3) Class and Subclass**

52.    **Sales Professional Class**.  All current and former California-based Paycom employees who hold or have held a Sales Professional position (or its equivalent) for the four year period prior to the filing of this Complaint through the conclusion of this case.

53.    **Sales Professional Subclass**.  All former California-based Paycom employees who held a Sales Professional position (or its equivalent) for the three year period prior to the filing of this Complaint through the conclusion of this case.

**Rule 23(b)(1) and (2) Classes**

54.    **Likeness Waiver Class**.  All current and former California-based Sales Professionals who signed the Likeness Waiver (or its substantial equivalent) through the conclusion of this case.

55.    **The Confidentiality Requirements and Indemnity Class ("NDA Class")**.  All current and former California-based Sales Professionals who signed or were subject to Paycom's confidentiality and indemnity requirements (or their substantial equivalents) through the conclusion of this case.

56.    **The Non-Solicit Class**.  All current California-based Sales Professionals who signed the Non-Solicitation Agreement (or its substantial equivalent) through the conclusion of this case and all former California-based Sales Professionals employed by Paycom during the year prior to the filing of this Complaint through the conclusion of this case.

57.    **The Forum Selection/Choice of Law Class**.  All current and former California-based Sales Professionals, through the conclusion of this case, who signed a Paycom employment document with a non-California forum selection or choice of law provision.

58.    Plaintiff reserves the right to refine the definition of the proposed Classes (including the applicable time frames) based on further investigation and discovery.  Plaintiff also reserves the right to add additional claims on behalf of the proposed Classes.

- 13 -

**Class Treatment is Appropriate**

59.     Plaintiff's claims should be resolved on a class-wide basis.

60.     The Classes are so numerous that joinder of all members is impracticable.  While the exact number of Class members is currently unknown to Plaintiff, Plaintiff contends – based on information and belief – that there are more than 200 current and former employees in the Classes.

61.     There are questions of law or fact common to the Classes. These include, but are not limited to:

a.      Are Sales Professionals exempt from California's overtime laws?

b.      Does Paycom reasonably expect its Sales Professionals to perform more than 50% of their working time on outside sales?

c.      Do the Sales Professionals' job duties constitute outside sales within the meaning of California law?

d.      Does Paycom suffer or permit Sales Professionals to work overtime?

e.      Is Paycom's refusal to pay Sales Professionals all wages due upon separation or termination "willful" within the meaning of Labor Code § 203?

f.      Does Paycom provide Sales Professionals with wage statements in compliance with Labor Code § 226?

g.      Does the choice-of-law and forum selection clauses in Paycom's employment documents violate Labor Code § 925 and other California laws?

h.      Do employees have a California constitutional right to privacy in their Likeness?

i.      Is "consent" to the use of an employee's likeness voluntary when it is a condition of employment?

j.      Can Paycom lawfully require employees to give up their likeness in consideration for employment?

k.      Can Paycom lawfully require its employees to release future claims arising from the use or sale of their likeness?

l.       Do Paycom's confidentiality requirements violate the California Labor, Business & Professions, and Government Codes?

m.       Does the indemnity provision in the Paycom NDA violate California law?

n.       Does Paycom's Non-Solicitation Agreement violate California law?

o.       Does Paycom require its employees to sign writings that violate Labor Code § 432.5 because they contain terms and conditions that Paycom knows are prohibited by law?

62.    With respect to the Rule 23(b)(3) Class, the common questions of law or fact predominate over any questions affecting individual putative class members.  A class action is superior to other methods for fairly and efficiently adjudicating the claims.  Class treatment will permit a large number of similarly situated persons to prosecute their claims in a single forum, without unnecessary duplication, and without fear of retaliation.  The damage incurred by each class member is relatively small, and the burdens of litigation would make it difficult or impossible for individual members to redress the wrong done to them.  The cost to the court system of individualized litigation would be substantial.  Individualized litigation would also present the potential for inconsistent or contradictory judgments.

63.    With respect to the Rule 23(b)(1) and (2) Classes, Paycom has acted or refused to act on grounds that apply generally to the Classes, such that injunctive and declaratory relief is appropriate respecting the Classes as whole.  Moreover, inconsistent or varying adjudications with respect to individual class members would establish incompatible standards of conduct for Paycom.  Alternatively, adjudications with respect to individual class members would, as a practical matter, substantially impair or impede the ability of absent individual class members to protect their interests.

64.    Plaintiff's claims are typical of the claims of the Classes he seeks to represent.

65.    Plaintiff will fairly and adequately represent and protect the interests of the Classes.  Plaintiff is a former Sales Professional.  He does not have interests which are adverse to the interests of absent class members.

66.     Class counsel is experienced and qualified and capable.  It has litigated numerous class action and representative cases.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### OVERTIME

**(On Behalf of Plaintiff and the Sales Professional Class)**

67.     Under California law, an employer must pay an employee overtime based upon their regular rate of pay for time worked in excess of 8 hours in a day or 40 hours in a week.  *See, e.g.,* California Labor Code sections 510, 1194.

68.     As detailed above, Paycom knew or should have known that Plaintiff and the Sales Professional Class worked more than eight hours a day and more than forty hours a week.

69.     As detailed above, Paycom failed to pay Plaintiff and the Class overtime for time spent working more than 8 hours in a day and/or 40 hours in a week.

70.     Plaintiff and the Sales Professional Class were harmed as a result.  They did not receive all the wages to which they were and are entitled.

### SECOND CAUSE OF ACTION

### (WAITING TIME PENALTIES)

**(On Behalf of Plaintiff and the Sales Professional Subclass)**

71.     Under California law, an employer must pay an employee all wages due upon termination or resignation.  The willful failure to do so results in waiting time penalties equal to 30 days of an employee's wage.  *See, e.g.,* Labor Code section 203.

72.     As detailed above, Paycom did not pay Plaintiff and the Subclass all wages due and owing upon their separation from Paycom's employ.  Paycom did not pay overtime wages.

73.     As detailed above, this conduct by Paycom was willful.  It knew or should have known of the overtime incurred by Plaintiff and the Subclass.

74.     As a result, Paycom is liable to Plaintiff and the Subclass for waiting time penalties.

### THIRD CAUSE OF ACTION

### (FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS)

### (On Behalf of Plaintiff and the Sales Professionals Class)

75.     Under California law, an employer must provide employees with an accurate wage statement.  Among other things, the wage statement must include the gross wages earned, the total hours worked, and the wage rate worked for each hour.  An employee suffers injury when this law is violated if the employee cannot (among other things) easily determine from the wage statement the gross or net wages earned or the hours worked.  The penalties for violating this law are set by statute.  *See, e.g.,* California Labor Code § 226.

76.     As detailed above, Paycom knowingly failed to provide Plaintiff and the Sales Professional Class with accurate wage statements.

77.     Plaintiff and the Sales Professional Class suffered injury as a result of Paycom's conduct.  They were not able, from a review of the wage statement (assuming it was provided) to determine the gross and net wages earned, as well as the hours worked, and the applicable hourly rates.

### FOURTH CAUSE OF ACTION

### (Declaratory and Injunctive Relief as to the Likeness Waiver)

### (On Behalf of Plaintiff and the Likeness Waiver Class)

78.     California's constitutional right to privacy was established for a public reason.  It "prevents business interests from collecting and stockpiling information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us."  The constitutional right to privacy encompasses one's right to their voice, appearance, name, biographical material, emotions, expressions, and personalities, i.e., their "likeness."

79.     Labor Code § 450 was established for a public reason.  It states that no employer may compel or coerce any employee or applicant to patronize their employer in the purchase of a thing of value. Under this statute, the "purchase of a thing of value" includes the "purchase" of the job itself.  In addition, Labor Code § 450 prohibits employers from requiring the payment of

"consideration of <u>any type</u>" in exchange for employment, including the payment of the employees' right to their own likeness.

80.     Labor Code § 432.5 was established for a public reason.  It states (among other things) that no employer shall require any employee to agree, in writing, to any term or condition which is known by the employer to be prohibited by law.

81.     Civil Code § 1668 states that "all contracts which have as their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person of another, or a violation of law, whether willful or negligent, are against the policy of the law." Civil Code § 3513 states that "a law established for a public reason cannot be contravened by private agreement."  Civil Code § 1667 defines an "unlawful contract" as one that is "contrary to an express provision of the law," "contrary to the policy of express law, though not expressly prohibited," or "otherwise contrary to good morals." Government Code §§ 17200 *et seq.* makes it an unlawful and unfair business practice to require employees to sign a contract that violates the above laws.

82.     In light of the facts and laws set forth above, a case or controversy exists within the meaning of 28 U.S.C. § 2201 as to whether Paycom's requirement that employees sign the Likeness Waiver, as well as the Likeness Waiver itself, are unlawful and unenforceable.

83.     Plaintiff and the Class seek a judicial declaration of their rights and obligations under the Likeness Waiver.  Specifically, they seek a judicial declaration that Paycom's requirement that employees agree to the Likeness Waiver, and that the Likeness Waiver itself, are unlawful and unenforceable.  Among other things, they seek a judicial declaration that:

a.     The Likeness Waiver is unlawful and unenforceable because employees have a constitutional right to privacy, and this constitutional right is a public right that cannot be waived by private agreement under Civil Code § 3513.

b.     The Likeness Waiver is unlawful and unenforceable because the employees' "consent" to the waiver as a condition of, and in consideration for, employment is not voluntary.

c. Paycom violates its employees' constitutional right to privacy by using their likenesses for non-Company, trade, and commercial purposes.

d. The Likeness Waiver violates Labor Code § 450 because an employer cannot require its employees to give up their likeness in consideration for employment.

e. The Likeness Waiver is unlawful and unenforceable because it contains a future release of all claims (including for intentional torts) that purports to exempt Paycom and all the "Releasees" from responsibility for their own fraud, willful injury to the person of another, and/or a violation of the law, all in violation of Civil Code §§ 1667-68.

f. The Likeness Waiver violates Labor Code § 432.5 because Paycom requires its employees to sign it as a condition of employment, and it is known by Paycom to be prohibited by law.

84. Ancillary to this judicial declaration, Plaintiff and the Class seek an injunction: (1) prohibiting Paycom from requiring class members to sign the Likeness Waiver in consideration for, or as a condition of, their employment; (2) prohibiting Paycom from enforcing or seeking to enforce the Likeness Waiver; (3) prohibiting Paycom from using or selling its employees' likenesses; (4) requiring Paycom to disgorge any profits or revenue earned through the sale or use of its employees' likenesses for "non-Company," "trade," or "commercial purposes," and provide restitution; and (5) requiring Paycom to inform class members that the Likeness Waiver, that Paycom will not threaten to enforce, seek to enforce, or enforce the Likeness Waiver, and (6) that Paycom will not use or sell their likenesses.

### FIFTH CAUSE OF ACTION

### (Declaratory and Injunctive Relief as to the Confidentiality Requirements)

### (On Behalf of Plaintiff and the NDA Class)

85. Business & Professions Code § 16600 states that any agreement in restraint of trade is void.  The Cartwright Act provides that any combination in restraint of trade is "unlawful, against public policy and void." *See* Business & Professions Code § 16726.

86. Government Code § 19264.5 makes it an unlawful employment practice to require an employee to sign a non-disparagement or other document that purports to deny the employee

the right to disclose information about unlawful acts in the workplace, including but not limited to, information pertaining to sexual harassment or any other unlawful or potentially unlawful conduct.

87.     Labor Code §§ 232 and 1197.5 make it unlawful for an employer to prohibit employees from disclosing or discussing information about their own wages or the wages of others.  Labor Code § 232 makes it unlawful for an employer to prohibit employees from disclosing information about their working conditions.  Labor Code § 1102.5 makes it unlawful for an employer to adopt or enforce any policy, rule or regulation prohibiting employees from disclosing information about reasonably-suspected violations of the law to government agencies. Labor Code § 98.6 makes it unlawful to threaten employees with discharge for engaging in lawful conduct off work premises during non-work hours.  Labor Code § 432.5 states that no employer shall require any employee to agree, in writing, to any term or condition known by the employer to be prohibited by law.

88.     These laws were established for a public reason.

89.     Civil Code § 3513 states that "a law established for a public reason cannot be contravened by private agreement."  Civil Code § 1667 defines an "unlawful contract" as one that is "contrary to an express provision of the law," "contrary to the policy of express law, though not expressly prohibited," or "otherwise contrary to good morals."

90.     Government Code §§ 17200 *et seq.* makes it an unlawful business practice to require employees to comply with confidentiality requirements that violate the above laws.

91.     In light of the facts and laws set forth above, a case or controversy exists within the meaning of 28 U.S.C. § 2201 as to whether Paycom's confidentiality requirements, as set forth in its Insider Trading Policy, Code of Conduct, Employee Handbook, Paycom NDA, and otherwise, are unlawful and unenforceable.

92.     Plaintiff and the Class seek a judicial declaration of their rights and obligations with respect to Paycom's confidentiality requirements.  Specifically, they seek a judicial declaration that Paycom's confidentiality requirements violate: Business & Professions Code §§ 16600 and 17200 *et seq.*, the Cartwright Act, Government Code § 12964.5, Civil Code § 3513,

Civil Code § 1667, and Labor Code §§ 98.6, 232, 232.5, 432.5, 1102.5, and 1197.5. Among other things:

a.     The confidentiality requirements unlawfully restrain trade because they prohibit Plaintiff and the Class from using "non-public information" for purposes of competition, prohibit former employees from saying they worked at Paycom, and prohibit former employees from "disparaging" Paycom or its business or services in the course of competing with it.

b.     The confidentiality requirements violate Government Code § 12964.5 because they are required as condition of employment, and they prohibit employees from disclosing actual or potentially illegal conduct to others.

c.     The confidentiality requirements violate Labor Code § 98.6, other Labor Code provisions, and California's constitutional right to liberty of speech because they threaten Plaintiff and the Class with termination and otherwise prohibit them from, for example, speaking to the media or posting information about Paycom on the internet (including social media sites such as Glassdoor or Facebook) or "disparaging" Paycom.  They also prohibit employees from even saying (to anyone) that they have knowledge of Paycom's "confidential information."

d.     The confidentiality requirements violate Labor Code §§ 232, 232.5, and 1197.5 because they prohibit employees from disclosing information about their wages, the wages of others, and their working conditions, including, but not limited to, information about Paycom employee compensation, information, commission policies, bonus policies, and benefit policies, Paycom employees' "personally identifiable information" and Paycom employees' performance information.

e.     The confidentiality requirements violate Labor Code § 1102.5 because they prohibit employees from disclosing information about reasonably-suspected violations of the law to government agencies if the information is "confidential" and/or (depending on the policy) a government agency other than the SEC or law enforcement (and then only with respect to federal offenses and security law violations).

f.      The confidentiality requirements violate Labor Code § 432.5 because they require employees to agree, in writing, to confidentiality terms or conditions known by Paycom to be prohibited by law.

93.     Ancillary to this judicial declaration, Plaintiff and the Class seek an injunction: (1) prohibiting Paycom from requiring class members to sign or comply with its current confidentiality requirements; and (2) prohibiting Paycom from threatening to enforce or enforcing its current confidentiality requirements.  Plaintiff and the Class also seek an affirmative injunction: (1) requiring Paycom to modify its confidentiality requirements to comply with the above laws, and (2) requiring Paycom to inform class members that its confidentiality requirements are illegal, and that Paycom will not threaten to enforce or enforce its illegal confidentiality requirements.

## SIXTH CAUSE OF ACTION

### (Declaratory and Injunctive Relief as to the Indemnity Provision in the Paycom NDA)
### (On Behalf of Plaintiff and the NDA Class)

94.     Labor Code § 2802 requires an employer to indemnify employees for all necessary expenditures or losses incurred by employees in the direct consequence of the discharge of their job duties, even when they are unlawful.  Labor Code § 2804 states that any contract or agreement made by an employee to waive the benefits of Labor Code § 2802 is null and void.

95.     Labor Code § 432.5 prohibits an employer from requiring an employee to agree, in writing, to any term or condition known by the employer to be prohibited by law.

96.     Government Code §§ 17200 *et seq.* makes a violation of the above laws an unlawful business practice.

97.     These laws were established for a public reason.

98.     Civil Code § 1668 states that "all contracts which have as their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person of another, or a violation of law, whether willful or negligent, are against the policy of the law." Civil Code § 3513 states that "a law established for a public reason cannot be contravened by private agreement."  Civil Code § 1667 defines an "unlawful contract" as one that is "contrary to

an express provision of the law," "contrary to the policy of express law, though not expressly prohibited," or "otherwise contrary to good morals."

99.     In light of the facts and laws set forth above, a case or controversy exists within the meaning of 28 U.S.C. § 2201 as to whether Paycom's requirement that Plaintiff and the Class sign the Paycom NDA, which includes the indemnity provision referenced above, violates the law.  A case or controversy also exists as to whether the indemnity provision contained in the Paycom NDA is unlawful and unenforceable.

100.     Plaintiff and the Class seek a judicial declaration of their rights and obligations with respect to the indemnity provision in the Paycom NDA.  Specifically, they seek a judicial declaration that Paycom's requirement that employees sign the Paycom NDA with the indemnity provision violates Labor Code §§ 2802 and 432.5 and Business & Professions Code §§ 17200 *et seq*.  They also seek a declaration that the indemnity provision in the Paycom NDA is unlawful and violates, among other things, Labor Code § 2802, 2804, Civil Code §§ 1667-1668, 3513, and Business & Professions Code §§ 17200 *et seq*.  For example:

a.     The indemnity provision is unlawful because it requires employees to indemnify Paycom for conduct arising during the course of their employment, even though Paycom has an obligation to indemnify its employees. *See, e.g.,* Labor Code § 2802.

b.     The indemnity provision violates Labor Code § 2804 because it requires employees to waive the benefits of Article 2 of the Labor Code, including the right to indemnity under Labor Code § 2802.

c.     The indemnity provision is unlawful because it requires employees to "hold harmless" Paycom for conduct for which Paycom is liable.  This constitutes an unlawful future release of claims prohibited by Civil Code § 3513.

d.     Paycom knows the indemnity provision is prohibited by law but nevertheless requires employees to sign the indemnity provision as a condition of employment. This is a violation of Labor Code § 432.5.

101.     Ancillary to this judicial declaration, Plaintiff and the Class seek an injunction: (1) prohibiting Paycom from requiring class members to sign or comply with the Paycom NDA as it

Case 2:19-cv-08994-AS   Document 1   Filed 10/18/19   Page 25 of 29   Page ID #:25

relates to the indemnity provision; and (2) prohibiting Paycom from threatening to enforce or enforcing the indemnity provision in the Paycom NDA.  Plaintiff and the Class also seek an affirmative injunction: (1) requiring Paycom to modify its Paycom NDA to exclude the indemnity provision; and (2) requiring Paycom to inform class members that the indemnity provision in the Paycom NDA is illegal, and that is will not threaten to enforce or enforce the indemnity provision.

### SEVENTH CAUSE OF ACTION

#### (Declaratory and Injunctive Relief as to the Non-Solicitation Agreement)

#### (On Behalf of Plaintiff and the Non-Solicit Class)

102.    Business & Professions Code § 16600 states that any agreement in restraint of trade is void.  The Cartwright Act provides that any combination in restraint of trade is "unlawful, against public policy and void." See Business & Professions Code § 16726.

103.    Labor Code §§ 232 and 1197.5 make it unlawful for an employer to prohibit employees from disclosing or discussing information about their own wages or the wages of others.  Labor Code § 232.5 makes it unlawful for an employer to prohibit employees from disclosing information about their working conditions.  Labor Code § 432.5 states that no employer shall require any employee to agree, in writing, to any term or condition known by the employer to be prohibited by law.

104.    These laws were established for a public reason.

105.    Civil Code § 3513 states that "a law established for a public reason cannot be contravened by private agreement."  Civil Code § 1667 defines an "unlawful contract" as one that is "contrary to an express provision of the law," "contrary to the policy of express law, though not expressly prohibited," or "otherwise contrary to good morals."

106.    Government Code § 17200 *et seq.* makes it an unlawful business practice to require employees to agree and comply with a non-solicitation agreement that violates the above laws.

107.    In light of the facts and laws set forth above, a case or controversy exists within the meaning of 28 U.S.C. § 2201 as to whether Paycom's requirement that employees sign its

COMPLAINT AGAINST PAYCOM

non-solicitation agreement, and the non-solicitation agreement itself, are unlawful and unenforceable.

108.   Plaintiff and the Class seek a judicial declaration of their rights and obligations with respect to Paycom's non-solicitation agreement.  Specifically, they seek a judicial declaration that Paycom's non-solicitation agreement violates: Business & Professions Code §§ 16600 and 17200 *et seq.*, the Cartwright Act, Civil Code §§ 1667, 3513, and Labor Code §§ 98.6, 232, 232.5, 432.5, and 1197.5. Among other things:

a.   The non-solicitation agreement constitute an unlawful restraint on trade because it prohibits the solicitation of Paycom's customers, potential customers, referral sources, and employees.

b.   The non-solicitation agreement violates Labor Code §§ 98.6, 232, 232.5, and 1197.5 because it prohibits former employees from providing any "information pertaining to Paycom's employees to any subsequent employer or any person," including information about those employees' wages, working conditions, or performance.

c.   Paycom's requirement that employees sign the non-solicitation agreement as a condition of employment violates Labor Code § 432.5 because Paycom knows the non-solicitation agreement is prohibited by law.

109.   Ancillary to this judicial declaration, Plaintiff and the Class seek an injunction: (1) prohibiting Paycom from requiring class members to sign or comply with its non-solicitation agreement; and (2) prohibiting Paycom from threatening to enforce or enforcing its non-solicitation agreement.  Plaintiff and the Class also seek an affirmative injunction requiring Paycom to inform class members that its non-solicitation agreement is unlawful and that Paycom will not threaten to enforce or enforce its non-solicitation agreement.

### EIGHTH CAUSE OF ACTION

### (Declaratory and Injunctive Relief

### as to the Forum Selection and Choice of Law Provisions)

### (On Behalf of Plaintiff and the Forum Selection/Choice of Law Class)

110.    Labor Code § 925 prohibits an employer from requiring an employee who primarily resides and works in California to agree to a provision that either: (1) requires the employee to adjudicate outside of California a claim arising in California; or (2) deprives the employee of the substantive protection of California law with respect to a controversy arising in California.

111.    Labor Code § 432.5 makes it unlawful for an employer to require an employee to agree, in writing, to a term or condition known by the employer to be prohibited by law.

112.    Plaintiff, on behalf of himself and the Class, assert the choice-of-law and forum selection provisions in the documents referenced above are void and illegal, not just under Labor Code § 925, but also under other California laws, including California's constitutional right to privacy, Business & Professions Code §§ 16600, 17200 *et seq.*, the Cartwright Act, and Labor Code §§ 98.6, 203, 226, 232, 232.5, 432.5, 450, 510, 1102.5, 1194, 1197.5, 2802, and 2804. These laws were established for a public reason and establish unwaivable rights.

113.    In light of the facts and laws set forth above, a case or controversy exists within the meaning of 28 U.S.C. § 2201 as to whether Paycom's requirement that Plaintiff and the Class agree to Oklahoma-based forum selection and choice of law provisions is unlawful and unenforceable.

114.    Plaintiff and the Class seek a judicial declaration of their rights and obligations with respect to Paycom's forum selection and choice of law provisions.  Specifically, they seek a judicial declaration that Paycom violates the law (including Labor Code §§ 432.5 and 925) by requiring employees to agree to the forum selection and choice of law provisions in their employment documents.  They also seek a declaration that the forum selection and choice of law provisions violate the laws referenced above.

115.    Ancillary to this judicial declaration, Plaintiff and the Class seek an injunction: (1) prohibiting Paycom from requiring class members to sign employment documents that contain out-of-state forum selection or choice of law provisions; and (2) prohibiting Paycom from threatening to enforce or enforcing these forum selection and choice of law provisions.  Plaintiff and the Class also seek an affirmative injunction requiring Paycom to inform class members that its forum selection and choice of law provisions are unlawful, and that it will not threaten to enforce or enforce these provisions.

**NINTH CAUSE OF ACTION**

**UNFAIR BUSINESS PRACTICES**

**(On Behalf of Plaintiff and the Sales Professional Class)**

116.    California law prohibits any unlawful, unfair, or fraudulent business practice.  *See* California Business and Professions Code section 17200.

117.    Through its actions (as described above), Paycom has violated numerous California laws.  Plaintiff and the Sales Professional Class have been harmed by Paycom's conduct.  They have suffered economic injury because they have not been paid all wages earned.

118.    Plaintiff and the Sales Professional Class thus seek restitution and injunctive relief with respect to Paycom's violation of the overtime laws.  Plaintiff further seeks an appropriate private and public injunction, and other appropriate relief, to remedy Paycom's other illegal and unfair business practices.

**TENTH CAUSE OF ACTION**

**PAGA**

**(On Behalf of Plaintiff and the State of California)**

120.    [Reserved].

**DEMAND FOR A JURY TRIAL**

121.    Plaintiff hereby demands a jury trial.

///

///

///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Classes (and, upon amendment, the State of California) prays for judgment against Paycom as follows:

1.    An Order that this action may proceed and be maintained on a class-wide basis;

2.    Appropriate injunctive relief;

3.    Attorneys fees and costs;

4.    Disgorgement and restitution, according to proof;

5.    Damages, according to proof;

6.    Statutory and civil penalties, according to proof;

7.    Back wages, according to proof;

8.    Interest;

9.    All other relief the Court deems equitable and proper.


DATED: October 18, 2019                BAKER CURTIS & SCHWARTZ, P.C.


                                        By: _____/S/ Chris Baker_____
                                             Chris Baker
                                             Attorneys for Plaintiff
                                             CAMERON ROSETTA