CHRIS BAKER, State Bar No. 181557
cbaker@bakerlp.com
MICHAEL CURTIS, State Bar No. 252392
mcurtis@bakerlp.com
**BAKER CURTIS & SCHWARTZ, P.C.**
1 California Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 433-1064
Facsimile: (415) 366-2525

Attorneys for Plaintiff
CAMERON ROSETTA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON ROSETTA (on behalf of himself and all others similar situated),<br><br>Plaintiff,<br><br>v.<br><br>PAYCOM SOFTWARE, INC. and PAYCOM PAYROLL, LLC,<br><br>Defendants. | Case No. 2:19-cv-8994-AS<br><br>**MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge: Hon. Alka Sagar<br>Date:  August 5, 2021<br>Time: 10:00 a.m.<br>Ctrm: 540, Roybal |

**PLEASE TAKE NOTICE** that on August 5, 2021, at 10:00 a.m., before the Honorable Alka Sagar, located at the Roybal Federal Building U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012, Courtroom 540, Fifth Floor, plaintiff Cameron Rosetta will, and hereby does, move the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an order: (1) Certifying a class for

MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT;
MEMO OF POINTS AND AUTHORITIES

purposes of settlement; (2) Preliminarily approving the Class Settlement in this action; (3) Approving of the manner and form of notice to be sent to Class Members; and (4) Scheduling a hearing for consideration of final approval of the Class and PAGA Settlement.

The motion is made following a meet and confer process that included telephone discussions and email correspondence with Defense Counsel.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities attached to this Motion, the Declarations, their Exhibits, all pleadings and papers filed herein, the arguments of counsel, and any other matters properly before the Court.

DATED:  July 8, 2021          **BAKER CURTIS & SCHWARTZ, P.C.**


By:  /s/ Michael Curtis
Chris Baker
Michael Curtis
Attorneys for Plaintiff
CAMERON ROSETTA

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................1

II.   BRIEF STATEMENT OF FACTUAL ALLEGATIONS AND CLAIMS.......2

      A.  Sales Professionals' Duties ................................................2

      B.  Paycom's Agreements and Policies ............................................3

III.  THE CLASSES AND PAGA AGGRIEVED EMPLOYEES.........................4

IV.   PROCEDURAL HISTORY ....................................................................5

V.    SUMMARY OF THE AGREEMENT .......................................................7

VI.   ARGUMENT....................................................................................10

      A.  Preliminary Certification Is Appropriate for Settlement Purposes...........10

            1.  Numerosity ........................................................................10

            2.  Typicality........................................................................11

            3.  Adequacy and the Appointment of Class Counsel................................11

                  a.  Baker Curtis & Schwartz, P.C. Is Qualified Counsel .....................11

                  b.  Plaintiff's Interests Align with The Class' Interests .......................12

            4.  This Case Presents Common and Predominate Questions of
                Law and Fact and a Class Action Is the Superior Method
                of Adjudication ................................................................12

      B.  The Class Settlement Meets the Standards for Preliminary
          Approval Under Rule 23(e)........................................................14

            1.  The Class Greatly Benefits from the Settlement Sum and
                Paycom's Changing Its Employment Practices .................................16

            2.  Unclaimed Funds Will Be Sent to the State Controller Unclaimed
                Property Fund to Be Held for the Class Member................................176

            3.  The Gross Settlement Amount Recovers a Significant Percentage
                of the Potential Damages Despite Considerable Risks .........................17

MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT;
MEMO OF POINTS AND AUTHORITIES

a.  Misclassification Claims...................................................19

i.  Overtime …………….....................................................19

ii. Related Penalties …………….......................................20

b.  The Agreement/Policy Class Claims...............................22

4.  Plaintiff Performed the Necessary Discovery to Assess
and Resolve this Case.............................................................22

5.  The Settlement Leaves the Award of Attorneys' Fees to
the Court's Discretion ...........................................................23

C.  The Class Notice Satisfies F.R.C.P. Rule 23 ............................23

D.  Resolution of the PAGA Claims also Supports Preliminary Approval....24

1.  PAGA Misclassification Claims ...........................................24

2.  PAGA Agreement/Policy Claims .........................................25

VII.  CONCLUSION....................................................................................26

MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT;
MEMO OF POINTS AND AUTHORITIES

1

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Amaral v. Cintas Corp. No. 2*
 163 Cal. App. 4th 1157 (2008).................................................................20

*Andrew Potter v. Big Text Trailer Mfg., Inc.*
 2020 WL 1942619 (C.D. Cal. Mar. 2, 2020) ............................17, 19, 21

*Barnick v. Wyeth*
 522 F. Supp. 2d 1257 (C.D. Cal. 2007)...................................................20

*Campbell v. Best Buy Stores, L.P.*
 2014 WL 12778925 (C.D. Cal. August 15, 2014) ...................................6

*Chu v. Wells Fargo Investments, LLC*
 2011 WL 672645 (N.D. Cal. Feb. 16, 2011)...........................................24

*Cicero v. DirecTV, Inc.*
 2010 WL 2991486 (C.D. Cal. July 27, 2010) .........................................22

*City of Detroit v. Grinnell Corp.*
 495 F.2d 448 (2d Cir. 1974) ...................................................................17

*Class Plaintiffs v. City of Seattle*
 955 F.2d 1268 (9th Cir. 1992) ............................................................9, 15

*Contreras v. Worldwide Flight Services, Inc.*
 2020 WL 2083017 (C.D. Cal. Apr. 1, 2020)...........................................24

*D'Este v. Bayer Corp*
 492 Fed. Appx. 721 (2012)......................................................................20

*Duran v. U.S. Bank Nat. Assn.*
 59 Cal.4th 1 (2014).........................................................................5, 19, 20

*Eisenacher v. VITAS Hospice Servs., LLC*
 2021 WL 1846574 (N.D. Cal. Apr. 2, 2021)...........................................25

*Franco v. Ruiz Food Products, Inc.*
2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ........................................................24

*Greko v. Diesel U.S.A., Inc.*
277 F.R.D. 419 (N.D. Cal. 2011) ..........................................................................10

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ......................................... 10, 12, 15, 22

*Harris v. Vector Marketing Corp.*
656 F. Supp.2d 1128 (N.D. Cal. 2009)..................................................................19

*Hopson v. Hanesbrands, Inc.*
2008 WL 3385452 (S.D. Cal. Apr. 13, 2009) ......................................................24

*Hum v. Dericks*
162 F.R.D. 628 (D. Hawaii 1995) ........................................................................10

*In re Heritage Bond Litig.*
2005 WL 1594403 (C.D. Cal. Jun. 10, 2005) ......................................................15

*In re M.L. Stern Overtime Litig.*
2009 WL 995864 (S.D. Cal. Apr. 13, 2009) ........................................................24

*In re Omnivision Technologies, Inc.*
559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................................................21

*In re Pac Enters Sec. Litig.*
47 F.3d 373 (9th Cir. 1995) ..................................................................................15

*In re Tableware Antitrust Litigation*
484 F. Supp. 2d 1078 (N.D. Cal. 2007).........................................................15, 17

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*
527 F. Supp. 2d 1053 (N.D. Cal. 2007)................................................................13

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*
571 F.3d 953 (9th Cir. 2009) ................................................................................13

*Justice v. Civil Serv. Comm'n of San Francisco*
688 F.2d 615 (9th Cir. 1982)................................................................................17

MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT;
MEMO OF POINTS AND AUTHORITIES

*Kamar v. Radio Shack Corp.*
    254 F.R.D. 387 (C.D. Cal. 2008) ..................................................................12, 13

*Latona v. Aetna U.S. Healthcare Inc.*
    82 F. Supp. 2d 1089 (C.D. Cal. 1999) ...............................................................16

*Lazarin v. Pro Unlimited, Inc.*
    2013 WL 3541217 (N.D. Cal. July 11, 2013) ....................................................22

*Lerwill v. Inflight Motion Pictures, Inc.*
    582 F.2d 507 (9th Cir. 1978) ..............................................................................11

*Linney v. Cellular Alaska P'ship*
    151 F.3d 1234 (9th Cir. 1998) ......................................................................17, 21

*Lourdes Lefevre v. Five Star Quality Care, Inc.*
    2021 WL 2389884 (C.D. Cal. Jan. 7, 2021) ......................................................25

*Martinez v. Joe's Crab Shack Holdings*
    231 Cal. App. 4th 362 (2014) ............................................................................14

*Martino v. Ecolab*
    2016 WL 614477 (N.D. Cal. Feb. 16, 2016) ......................................................14

*Minor v. FedEx Office & Print Servs., Inc.*
    2013 WL 503268 (N.D. Cal. Feb. 8, 2013) ........................................................17

*Miranda v. Citibank, N.A.*
    2009 WL 10673988 (C.D. Cal. Aug. 3, 2009) ...................................................20

*Murillo v. Pac. Gas & Elec. Co.*
    266 F.R.D. 468 (E.D. Cal. 2010) .......................................................................14

*Raines v. Coastal Pac. Food Distribs., Inc.*
    23 Cal. App. 5th 667 (2018) ..............................................................................20

*Reber v. AIMCO/Bethesda Holdings, Inc.*
    2008 WL 4384147 (C.D. Cal. Aug. 25, 2008) ...................................................20

*Rodman v. Safeway Inc.*
    125 F. Supp. 3d 922 (N.D. Cal. 2015), *aff'd* 694 Fed. Appx. 612 (9th Cir. 2017) ..6

MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT;
MEMO OF POINTS AND AUTHORITIES

*Rodriguez v. Marshalls of CA, LLC*
    2020 WL 7753300 (C.D. Cal. July 31, 2020) ........................................24

*Rodriguez v. W. Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009) ...............................................18, 21, 23

*Savani v. URS Prof'l Sols. LLC*
    2014 WL 172503 (D.S.C. Jan. 15, 2014) ......................................18

*Schlagal v. Learning Tree, Int'l*
    1999 WL 672306 (C.D. Cal. Feb. 23, 1999) ...................................12

*Sobel v. Hertz Corp.*
    2014 WL 5063397 (D. Nev. Oct. 9, 2014)......................................18

*Stafford v. Brink's, Inc.*
    2014 WL 12586066 (C.D. Cal. Aug. 5, 2014) ................................21

*Topete v. Red Robin Int'l, Inc.*
    2018 WL 5917905 (C.D. Cal. Aug. 30, 2018) ................................20

*Wang v. Chinese Daily News, Inc*.
    2014 WL 1712180 (C.D. Cal. Apr. 15, 2014)..............................13, 14

*Williams v. Costco Wholesale Corp.*
    2010 WL 761122 (S.D. Cal. Mar. 4, 2010) ...................................15

## CODES, REGULATIONS & RULES

29 CFR § 541.502 ...............................................................................26

Cal. Bus. & Prof. Code §§ 17200 *et seq*. ...........................................20

Cal. Labor Code § 96(k)/98.6 ...........................................................25
Cal. Labor Code § 201 ........................................................................9
Cal. Labor Code § 202 ........................................................................9
Cal. Labor Code § 203 .....................................................................9, 13
Cal. Labor Code § 226 ..................................................................9, 13, 21
Cal. Labor Code § 226.3 .....................................................................9

MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT;
MEMO OF POINTS AND AUTHORITIES

Cal. Labor Code § 232 ....................................................................25
Cal. Labor Code § 232.5 .................................................................25
Cal. Labor Code § 432.4/450 ..........................................................25
Cal. Labor Code § 510 ...............................................................9, 25
Cal. Labor Code § 558 ...............................................................9, 25
Cal. Labor Code § 925 .....................................................................25
Cal. Labor Code § 1102.5 ...............................................................25
Cal. Labor Code § 1194 .....................................................................9
Cal. Labor Code §§ 2698 *et seq.* ("Private Attorneys General Act"
    or "PAGA") ....................................................................... *passim*
Cal. Labor Code § 2802/2804 ..........................................................25

F.R.C.P. Rule 23 ...............................................................19, 29, 30
F.R.C.P. Rule 23(a) ..........................................................................11
F.R.C.P. Rule 23(a)(1) ......................................................................12
F.R.C.P. Rule 23(a)(2) ......................................................................15
F.R.C.P. Rule 23(a)(3) ...............................................................12, 13
F.R.C.P. Rule 23(a)(4) ...........................................................13, 14, 15
F.R.C.P. Rule 23(b)(1) and (2) ........................................................11
F.R.C.P. Rule 23(b)(1), (2) or (3) ...................................................11
F.R.C.P. Rule 23(b)(3) ......................................................................16
F.R.C.P. Rule 23(c)(2)(B) .................................................................29
F.R.C.P. Rule 23(e) ...........................................................................19
F.R.C.P. Rule 23(e)(2) ......................................................................20
F.R.C.P. Rule 23(g) .................................................................11, 14, 15
F.R.C.P. Rule 23(h) ...........................................................................20

## OTHER

SOCIAL SECURITY, UNDERSTANDING THE BENEFITS (2015)
    at 8-9 (http://www.ssa.gov/pubs/EN-05-10024.pdf) ...............................7

MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT;
MEMO OF POINTS AND AUTHORITIES

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

On October 18, 2019, Plaintiff Cameron Rosetta filed this action against defendants Paycom Software, Inc. and Paycom Payroll LLC's (collectively "Paycom").  Plaintiff generally alleged Paycom (1) unlawfully treats its California-based "Sales Professionals" as exempt from California's overtime laws; and (2) requires its Sales Professionals and other California-based employees to sign and comply with agreements and policies that violate their right to privacy and that contain illegal provisions such as forum selection, release, indemnity, non-disclosure, non-disparagement, non-compete, and non-solicitation requirements.  The operative Complaint alleges class claims focused on recovering overtime wages connected with the misclassification and seeks declaratory/injunctive relief to bring Paycom's policies and agreements into compliance with California law.  Plaintiff also asserts a claim under the Private Attorney Generals Act (PAGA) based on each category.

The parties have now settled the alleged claims and stipulated to class certification.  In exchange for a release tailored to the facts and claims, Paycom has agreed to (1) pay a non-reversionary, common fund, settlement of $1,500,000, (2) reclassify its Sales Professionals as non-exempt under some circumstances and otherwise revise the time they work outside the office, and (3) revise its other at-issue policies and agreements.  The monetary component of the settlement allocates one million dollars to the Class and PAGA misclassification claims.  Five hundred thousand dollars is allocated to the PAGA Contract/Policy Claims.  The gross Class settlement amount gets the Class approximately 13 cents on the dollar of their compensatory damages.  The gross PAGA settlement recovers over $81 per pay period.  Importantly, the settlement recovers 100 percent of the desired injunctive relief because Paycom has agreed to reclassify its Sales Professionals as exempt during certain employment periods and change their job duties to render them otherwise exempt.  Paycom has also agreed to revise its policies and agreements to

comply with California law and provide notice to the aggrieved employees of their California rights.

Plaintiff respectfully requests that the Court preliminarily approve the Rule 23 class action settlement. Plaintiff will request approval of the PAGA settlement at the final approval hearing.

## II.    BRIEF STATEMENT OF FACTUAL ALLEGATIONS AND CLAIMS

### A.    Sales Professionals' Duties

Paycom manufactures and sells cloud-based human resource and payroll solutions. Paycom has multiple sales offices in California that it typically staffs with a sales team comprised of a sales manager and around six to eight "Sales Professionals." (Rosetta Decl. ¶ 5.) From approximately December 2018 through April 2019, Plaintiff worked as an exempt Sales Professional at Paycom's Pasadena, California office. (*Id.* at ¶ 4.)

During their initial eight weeks, Sales Professionals spend at least four hours each day, four days a week training. As Paycom explains:

> We sell our solution exclusively through our captive sales force… [¶] We provide our sales force with an intensive eight-week training course that includes at least one week of training at our headquarters in Oklahoma City. Our unique training program includes instructions in accounting, business metrics, application features and tax matters relevant to our target market and we believe it fosters loyalty and helps maintain our corporate culture. Our training continues for our sales force through weekly in-office strategy sessions and leadership development training. (Curtis Decl. ¶ 39.)

When not engaged in the training program, Sales Professionals spend the rest of their first eight weeks doing cold calling and office work. They rarely, if ever, leave their offices to do outside sales work. (Rosetta Decl. ¶ 7.)

Following the training program, Plaintiff alleges that Paycom expects its Sales Professionals to arrive at the sales office between 7:00 and 8:00 a.m., and leave the sales office after 6:00 p.m. (Rosetta Decl. ¶ 8.) On Mondays and Fridays,

Paycom expects its employees to work at the sales office.  (*Id*.)  On Tuesdays, Paycom expects its employees to work at least half the business day in the sales office.  (*Id*.)  On Wednesdays and Thursdays, Paycom states employees should spend the business day (between 9:00 and 5:00) outside the sales office.  (*Id*.)  But Plaintiff contends that Sales Professionals rarely, if ever, filled Wednesday and Thursday with meetings outside the office. [1]  (*Id*.)  Indeed, the job descriptions produced by Paycom establish that Sales Professionals spend "up to 25%" of their time traveling.  (Curtis Decl. Ex. 5.)  And Paycom's "Position Description" identifies the responsibilities of: (1) prospecting at least eight hours a week (which is almost always cold-calling from the office); (2) preparing for sales calls; (3) conducting in-depth analyses of a potential client's HR methodologies; (4) managing the initial implementation of Paycom's solution; and (5) daily updating of Paycom's internal sales tracking system.  (Curtis Decl. Ex. 6.)

Neither Plaintiff nor other Sales Professionals interviewed by counsel spent more than 50% of their time outside the office engaged in sales, nor did Paycom tell them that they were supposed to do so.  (*Id.* at ¶ 13; Rosetta Decl. ¶ 6.)  Paycom expected employees to work outside business hours at home.  (Rosetta Decl. ¶ 8.)  As a result, Plaintiff worked overtime throughout his Paycom employment, estimating that he worked 55 hours or more per week.  (*Id.* at ¶ 6.)  Plaintiff's counsel's interviews of putative class members confirms that the other Sales Professionals also typically work 55 to 60 hours a week.  (Curtis Decl. ¶ 13.)

For these reasons, Plaintiff alleged claims for overtime wages and resulting statutory penalties in his first three causes of action and a related PAGA claim.

## B.      Paycom's Agreements and Policies

As a condition of initial and continued employment, Paycom requires

---

[1] One former employee explained that she only had the targeted number of meetings two or three times in the 18 months she worked at Paycom.  Curtis Decl. ¶ 13.

employees to sign and comply with agreements and policies that Plaintiff alleges violate California law.  Briefly, Paycom's:

- Video, Photo and Recording Release and Waiver (Rosetta Decl. Ex. 1) required employees to release their likenesses for Company and non-Company uses in perpetuity and contained an illegal choice of law provision;

- Code of Ethics and Business Conduct for Officers, Directors and Employees (*Id.* Ex. 2) imposed illegal confidentiality obligations and speech restrictions;

- Insider Trading Policy (*Id*. Ex. 3) also imposed confidentiality obligations and speech restrictions contrary to California law;

- Employee Confidentiality, Non-Disparagement, Non-Disclosure, Proprietary Information and Indemnification Agreement (*Id.* Ex. 4) imposed confidentiality, speech, and indemnity obligations contrary to California law and contained illegal choice of law and forum selection provisions;

- California Addendum to its Employee Handbook (*Id.* Ex. 5) imposed confidentiality obligations and speech restrictions contrary to California law; and

- Non-Solicitation Agreement (*Id.* Ex. 6) imposed confidentiality and indemnity obligations contrary to California law and illegally forbid employees from soliciting customers, referral sources, etc., and contained illegal choice of law and forum selection provisions.

Plaintiff sought class-wide declaratory/injunctive relief and PAGA penalties arising from these illegal agreements and policies.

## III.    THE CLASSES AND PAGA AGGRIEVED EMPLOYEES

While the Complaint alleges separate classes for the misclassification claim under Rule 23(b)(3) and the policies/agreements claims under Rule 23(b)(1) and (2), the Class Members of each are the same Sales Professionals.  Complaint ¶¶ 52-57. The parties, therefore, stipulated to certification of a single Rule 23 Class.  The Class Members "are defined as all current and former California Sales Representatives and Executive Sales Representatives of Defendants classified as exempt outside sales

professionals during the Covered Period." (Curtis Decl. Ex. 1, Article I(g).) [2]  The

Class Period starts on October 18, 2015, as alleged in the Complaint, and continued to

February 28, 2021, a date chosen by the parties to not dilute the recovery of the Class

Members identified at that time while seeking approval of the settlement.  (*Id.* at Ex.

1, Article I(i).)  There are 180 Class Members.  (*Id.* at ¶ 29.)

There are also two groups of aggrieved employees under the PAGA claim.

First, the PAGA Misclassification Aggrieved Employees are all current and

former California Sales Representatives and Executive Sales Representatives

classified as exempt outside sales professionals.  (*Id.* at Ex. 1, Article I(kk).)  This is

a subgroup of the Class Members, limited to the shorter PAGA Period of October

18, 2018, and through to February 28, 2021. (*Id.* at Ex. 1, Article I(oo).)  There are

107 PAGA Misclassification Aggrieved Employees.  (*Id.* at ¶ 37.)

Second, the PAGA Contract/Policy Aggrieved Employees are all current and

former California employees during the PAGA Period.  (*Id.* at Ex. 1, Article I(kk).)

This group includes all Paycom employees during the PAGA period—not just Sales

Professionals—because they all were subject to the at-issue policies and agreements.

There are 226 PAGA Contract/Policy Aggrieved Employees.  (*Id.* at ¶ 37.)

## IV.   **PROCEDURAL HISTORY**

On December 31, 2019, Plaintiff filed his First Amended Complaint adding

the PAGA claim. [Doc. #18].  Paycom answered on January 30, 2020 [Doc. #24],

which was followed by a meet and confer process about the propriety of Paycom's

alleged affirmative defenses.  Paycom filed an amended answer removing some of

its alleged defenses [Doc. #33] and Plaintiff moved to strike to obtain this Court's

ruling on the several of the 21 defenses that Paycom still alleged [Doc. #34]. [3]  The

---

[2] This motion establishes the propriety of class certification at pages 9 through 14.

[3] Plaintiff contended that the requirement "that a class action trial management plan
  must permit the litigation of relevant affirmative defenses," required Plaintiff to
  limit the Answer to only appropriate affirmative defenses.  *Duran v. U.S. Bank*

Court subsequently denied Plaintiff's motion to strike [Doc. #45] (Curtis Decl. ¶ 8.)

On February 14, 2020, the parties served their initial disclosures and Plaintiff served his first set of discovery requests.  Then on April 24, 2020, the parties entered a joint stipulation for protective order for informal mediation discovery [Doc. #46], which the Court entered on April 27, 2020.  (Curtis Decl. ¶ 9.)

During this period, the parties were negotiating arrangements for a mediation.  (*Id*.)  After the protective order was entered, Paycom provided documents and information to Plaintiff – including payroll data – in furtherance of mediation.  (*Id*. at ¶ 10.)  Plaintiff, with the aid of a data analyst, has modeled Paycom's exposure.  The parties first attempted mediation with the Honorable Wynne Carvill on July 9, 2020.  (*Id*.)  That mediation did not result in a settlement.  (*Id*.)

The parties then turned back to discovery—serving new requests and responses and working towards resolving discovery disputes.  (*Id*. at ¶ 11.)  During this time, the parties also made arrangements for a second mediation.  (*Id*.)  Armed with the new information provided through discovery, and further analysis by the parties and experts, they reached a settlement in principle in a mediation with Steve Pearl on November 5, 2020.  (*Id*.)  Over the next seven months, further negotiating the settlement particulars resulted in a signed Memorandum of Agreement followed by a finalized long-form settlement agreement.  (*Id*.)  During this period, the parties also negotiated the programmatic relief, e.g., the changes to Paycom's business practices, agreements, and policies.

## V.    SUMMARY OF THE AGREEMENT

On May 26, 2021, the parties executed the Settlement Agreement ("SA"), a copy of which is attached to the Curtis Declaration as Exhibit 1.  The Agreement requires Paycom to pay $1,500,000 into a non-reversionary settlement fund, labeled

---

*Nat. Assn*., 59 Cal.4th 1, 25 (2014); *Campbell v. Best Buy Stores, L.P.* 2014 WL 12778925, at *8 (C.D. Cal. August 15, 2014); *Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922, 942 (N.D. Cal. 2015), *aff'd* 694 Fed. Appx. 612 (9th Cir. 2017).

MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT; MEMO OF POINTS AND AUTHORITIES

the Gross Settlement Amount.  (SA § 3.07(a).)  It also requires Paycom to separately pay its employer's share of related payroll taxes.[4]  (SA § 3.02.)

The Gross Settlement Amount is allocated three ways: (1) the $980,000 payment to Participating Class Members (meaning those who do not opt-out) for the release of their class claims (the "Class Payment"), (2) the $20,000 PAGA Misclassification Settlement Payment to the State and the PAGA Misclassification Aggrieved Employees, and (3) the $500,000 PAGA Contract/Policy Settlement Payment to the State and the PAGA Contract/Policy Aggrieved Employees. (SA § 3.07(d) (1-3).)  Each payment is subject to a prorated share of any deductions from the Gross Settlement that the Court approves.  (SA, Article 1 ¶¶ h, mm, jj.) Those deductions, as outlined in the Settlement Agreement, are: (1) attorney's fees and costs, (2) an enhancement award for Plaintiff, and (3) claims administration costs (estimated at no more than $8,002). (SA § 3.07(c) (1-3).)  The Settlement Agreement leaves those amounts to the Court's discretion in accordance with applicable law, but Plaintiff's intent is to request attorneys' fees for $375,000 (the benchmark 25% of the gross settlement); litigation costs up to $11,000, and an enhancement award of $5,000.  (Curtis Decl. ¶¶ 34-35.)

The net Class Payment after deductions will be dispersed to Participating Class Members based on the amount of Qualifying Workweeks that each Participating Class Member worked during the Class Period. (SA § 3.07(d)(1).)

The net PAGA Misclassification Settlement Payment after deductions will be divided between the LWDA's 75% of the Payment and the Misclassified Aggrieved Employees' 25%.  (SA Art. 1 ¶ mm.) The portion of the Payment for Misclassified Aggrieved Employees will be distributed according to the number of individual

---

[4] Payroll taxes (at least for Social Security) directly benefit the class.  The amount contributed to Social Security correlates with the amount of money the employee will eventually receive. *See,* SOCIAL SECURITY, UNDERSTANDING THE BENEFITS (2015) at 8-9 (http://www.ssa.gov/pubs/EN-05-10024.pdf).

Qualifying Pay Periods each such aggrieved employee worked during the PAGA Period. (SA § 3.07(d)(2).)

The net PAGA Policy/Contract Settlement Payment after deductions will be divided between the LWDA's 75% of the Payment and the Misclassified Aggrieved Employees' 25%. (SA § 3.07(d)(3); Art. 1 ¶ jj.) Of the amount to be dispersed to the aggrieved employees, each will receive a minimum payment of $150, with the remainder distributed according to the number of Qualifying Pay Periods each such aggrieved employee worked during the PAGA Period. (SA § 3.07(d)(3).)

Along with the monetary component, Paycom has also agreed to permanently reclassify its California Sales Professionals as non-exempt employees while they are engaged in the Startline training program and during Covid-19 stay-at-home orders in California. (SA § 3.06(a).) Paycom also agreed to change certain policies and practices related to the time that their California Sales Professionals spend away from its place of business, their job descriptions and duties, and other issues affecting its classification of exempt outside salespersons. (SA § 3.06(b).) Paycom further agreed to abandon its non-solicitation and trade secret agreements as well as adopt new employment agreements and policies for use in California, including its employee handbook, code of conduct, insider trading agreement, NDA, and "Likeness Waiver." (SA § 3.06(c); Curtis Decl. ¶ 27.) The parties have reached agreement on the revisions.[5] Finally, the PAGA notice that will go to all Paycom's California employees who worked during the PAGA Period notifies that they are no longer subject to Paycom's prior policies and agreements, that new policies and agreements have been adopted, and directs them to the applicable sections of the Labor Code if they want to understand their rights better. (SA § 3.06(d); Ex. 1C.)

If the Court grants preliminary approval, the Settlement Administrator will

---

[5] Paycom has not yet agreed to filing its revised polices and agreements. Plaintiff recommends that the Court order the revised documents filed so it can review them before the final approval hearing.

send a class notice to each Class Member, by mail and email. (SA § 3.03.)  The notice will provide each Class Member an estimated individual settlement, as discussed above.[6]  In exchange, Participating Class Members will release:

> all causes of action that were alleged in the operative complaint or reasonably could have been alleged based on the facts and legal theories contained in the operative complaint, including all of the following claims for relief: (a) failure to pay overtime wages due; (b) failure to provide complete and accurate wage statements; (c) waiting time penalties that could have been premised on the claims, causes of action or legal theories of relief described above or any of the claims, causes of action or legal theories of relief pleaded in the operative complaint; (d) unfair business practices that could have been premised on the claims or legal theories of relief described above or any of the claims, causes of action or legal theories of relief pleaded in the operative complaint, including but not limited to the contractual claims arising out of defendant's use of certain employment agreements and policies, as alleged in the operative complaint; (e) all claims under the California Labor Code Private Attorneys General Act of 2004 ("PAGA") for violations of Labor Code sections 510, 558, 1194, 201, 202, 203, 226, and 226.3, which could have been premised on the claims or legal theories described above or any of the claims, causes of action or legal theories of relief pleaded in the operative complaint; and, (f) any other claims or penalties under the wage and hour laws pleaded in the Action, except that the Release under PAGA is limited to the Labor Code sections identified in subdivision (e) above; and (g) all damages, penalties, interest and other amounts recoverable under said claims, causes of action or legal theories of relief.

(SA § 4.01.)  The period of the Release will extend to the limits of the Covered Period, except that the PAGA claims are limited to the PAGA Period.  (*Id.*)

## VI.    **ARGUMENT**

### A.    **Preliminary Certification Is Appropriate for Settlement Purposes**

The Ninth Circuit has declared a strong judicial policy in favor of the settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

---

[6] The Notice and payment procedures are further discussed in section IV(B)(2), below.

MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT; MEMO OF POINTS AND AUTHORITIES

1992).  Consistent with the policy, courts have long recognized that class actions may be certified for settlement.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

A Court's task in assessing class certification is to "ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation" and that the action is maintainable under F.R.C.P. Rule 23(b)(1), (2) or (3).  *Id.* at 1019, 1022.  Class certification is appropriate here because the Class meets all the requirements of F.R.C.P. Rule 23(a) and, at a minimum, 23(b)(3). [7]  Moreover, Baker Curtis & Schwartz, P.C., should be formally appointed as Class Counsel under F.R.C.P. 23(g).

### 1.    *Numerosity*

"There is no magic number for determining when too many parties make joinder impracticable." *Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Hawaii 1995) ("Courts have certified classes with as few as thirteen members…."); *accord Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 425 (N.D. Cal. 2011) (certifying class with dispute about whether it had 33 or 19).   The 180 class members here more than meet this standard.  The numerosity requirement of F.R.C.P. 23(a)(1) is therefore met.

### 2.    *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "Typicality" thus requires that the named plaintiff have claims that are "reasonably coextensive with those of absent members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.

Plaintiff, a former Sales Professional, claims he was misclassified as exempt

---

[7] As explained above, the claims related to the polices and agreements were originally alleged as seeking certification under F.R.C.P. Rule 23(b)(1) and (2) but certification under 23(b)(3) is also appropriate because common questions predominate and because the Class Members are the same for all class claims so they will receive the same Notice.

MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT;
MEMO OF POINTS AND AUTHORITIES

from wage and hour laws just like all class members. He attended the same eight-week training, worked under the same job description (which was uniformly classified as exempt) and was subject to the policies/agreements at-issue in this action. In short, Plaintiff suffered the same harm, under the same practices, agreements and policies as the proposed Class. Accordingly, his claims are typical under F.R.C.P. 23(a)(3).

### 3.    *Adequacy and the Appointment of Class Counsel*

Rule 23(a)(4) requires that a class representative "fairly and adequately protect the interests of the class." In making this determination, the Court must consider: (1) if the plaintiff is represented by qualified counsel and (2) whether plaintiff or his counsel have any interests that conflict with, or are antagonistic to, the putative class members. *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978).

### a.    Baker Curtis & Schwartz, P.C. Is Qualified Counsel

The "qualified counsel" requirement of F.R.C.P. 23(a)(4) overlaps significantly with the requirements of Rule 23(g) as they relate to the appointment of class counsel. Plaintiff therefore addresses both these requirements together.

Plaintiff's counsel, Baker Curtis & Schwartz, P.C., is well-qualified to represent the Class. Chris Baker, Mike Curtis and Deborah Schwartz are all former attorneys at AmLaw 100 corporate firms where they routinely litigated large wage and hour class actions on behalf of corporate clients. (Curtis Decl. ¶¶ 3-5.) Each have spent their careers practicing labor and employment law. (*Id.*) Since founding the firm they have prosecuted (or are prosecuting) employment class actions or PAGA cases against Bank of America, OneWest Bank, PennyMac, Fidelity Investments, Google, The Variable Life Insurance Company (VALIC), Juul, Binary Capital, and, of course, Paycom. (*Id.*) Moreover, Baker Curtis & Schwartz has spent considerable time and resources identifying, investigating, and valuing the Class's claims and has no interests antagonistic to the Class. (*Id.* at ¶ 6, 10, 13, 25.) It will continue to commit all necessary resources to representing the Class. (*Id.* at ¶ 6.)

For these reasons, Plaintiff requests that the Court find that he is represented by

-11-                                         2:19-cv-8994- AS

qualified counsel for "adequacy" under F.R.C.P. Rule 23(a)(4) and appoint Baker Curtis & Schwartz P.C. as class counsel under F.R.C.P. Rule 23(g).

### b.  Plaintiff's Interests Align with The Class' Interests

As noted above, Plaintiff's interests align with the interests of the putative class. He is an adequate class representative under F.R.C.P. 23(a)(4).  *Schlagal v. Learning Tree, Int'l*, 1999 WL 672306, *3 (C.D. Cal. Feb. 23, 1999) (finding plaintiff an adequate representative where "the representative's interests are comparable to those of the absent class members").  Moreover, Plaintiff has been actively involved and is committed to representing the Class.  (Curtis Decl. ¶ 35; Rosetta Decl. ¶ 13.)

For these reasons, the Court should conclude that Plaintiff has satisfied the requirements of 23(a)(4) related to adequacy.

### 4.  *This Case Presents Common and Predominate Questions of Law and Fact and a Class Action Is the Superior Method of Adjudication*

F.R.C.P. 23(a)(2) requires "questions of fact and law that are common to the class."  To satisfy F.R.C.P. 23(b)(3), common questions must "predominate" over individualized issues.  "To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are identical."  *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008). When common questions "present a significant aspect of the case and . . .  can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative… basis." *Hanlon*, 150 F.3d at 1022.

The common questions that predominate for the Class here include:

a.    Are Sales Professionals exempt from California's overtime laws?

b.    Does Paycom reasonably expect its Sales Professionals to perform more than 50% of their working time on outside sales?

c.    Which, if any, of the Sales Professionals' job duties constitute outside

sales under California law?

      d.     Does Paycom suffer or permit Sales Professionals to work overtime?

      e.     Is Paycom "willfully" refusing to pay Sales Professionals all wages due upon separation within the meaning of Labor Code § 203?

      f.     Do Paycom's uniform wage statements violate Labor Code §226?

      g.     Do Paycom's law/forum selection clauses violate California law?

      h.     Do employees have a constitutional right to privacy in their Likeness?

      i.     Can Paycom lawfully require employees to give up their Likeness in consideration for employment?

      j.     Can Paycom lawfully require its employees to release future claims?

      k.     Do Paycom's confidentiality requirements violate the California law?

      l.     Do Paycom's indemnity provisions violate California law?

      m.     Does Paycom's Non-Solicitation Agreement violate California law?

      The policy/agreement claims should be certified because "class certification is usually appropriate where liability turns on an employer's uniform policy that is uniformly implemented since in that situation predominance is easily established." *Kamar,* 254 F.R.D. at 399 (citing *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1071 (N.D. Cal. 2007).

      While the Ninth Circuit has held that a uniform classification no longer suffices on its own to certify a class, it has also explained that "uniform corporate policies will often bear heavily on questions of predominance and superiority" and "centralized rules, to the extent they reflect the realities of the workplace, suggest a uniformity among employees that is susceptible to common proof." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958-59 (9th Cir. 2009); *accord Wang v. Chinese Daily News, Inc.*, 2014 WL 1712180, at *5 (C.D. Cal. Apr. 15, 2014). The uniformity with which Paycom describes the Sales Professional positions shows the similarity of their work, including job duties. (Curtis Decl. ¶ 12-13, Exs. 5 and 6.) This similarity in duties combined with the uniform classification calls for collective

-13-      2:19-cv-8994- AS

adjudication. *Martino v. Ecolab*, 2016 WL 614477, at *5 (N.D. Cal. Feb. 16, 2016).

As to superiority, "[l]itigation by class action has long been recognized as *the superior method* of resolving wage and hour claims in California." *Martino*, 2016 WL 614477, at *10 (quoting *Martinez v. Joe's Crab Shack Holdings*, 231 Cal. App. 4th 362, 367 (2014)). Here, as in other class actions, the potential damage to each Class Member is relatively small, particularly given the short statutes of limitations. In this situation, class certification promotes judicial economy, as well as the interests of the litigants. *Wang,* 2014 WL 1712180, at *5 ("Addressing Plaintiffs' common questions as a class action avoids hundreds of unnecessary "mini-trials" by allowing the Court to address [employer's] liability as to each of the nearly 200 class members with a single trial.") In short, a class action is the superior way to resolve this case.

For these reasons, the Court should certify the Class and appoint Baker Curtis & Schwartz, P.C. as Class Counsel.

### B.    The Class Settlement Meets the Standards for Preliminary Approval Under Rule 23(e)

While case law has long recognized that "the approval of a class action settlement takes place in two stages" and that in the first stage, the Court "preliminarily approves the Settlement pending a fairness hearing… and authorizes notice to the class" (*E.g. Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010)), the F.R.C.P. only confirmed this process in its 2018 amendments. *See* Rule 23, as amended December 1, 2018. The amended Rule 23(e) also boils down the factors considered across the country at the preliminary approval stage into the central issue of whether "the court will likely be able to… approve the proposal under Rule 23(e)(2)," i.e., grant final approval. The Advisory Committee Notes on subdivision (e)(1) provide a streamlined list of issues to focus on at this stage, namely the:

1.    "[E]xtent and type of benefits that the settlement will confer" on the class.

2.    Plans for distribution of any funds left unclaimed.

-14-                          2:19-cv-8994- AS

3.      Likely range of outcomes and the "risks that might attend full litigation."

4.      "[E]xtent of discovery completed in the litigation."

5.      Existence of other litigation with claims that would be released.[8]

6.      "[P]roposed handling of an award of attorney's fees under Rule 23(h)."[9]

Each of these factors may inform the decision of "whether the proposed settlement falls within the range of possible approval," meaning what could be found to be "fair, adequate, and reasonable." *Williams v. Costco Wholesale Corp.*, 2010 WL 761122, *5 (S.D. Cal. Mar. 4, 2010); *accord Class Plaintiffs*, 955 F.2d at 1276. Moreover, because parties represented by competent counsel are better positioned than courts to produce a settlement reflecting the parties' expected outcome, courts favor approval of settlement over continued litigation. *In re Pac Enters Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *In re Heritage Bond Litig.,* 2005 WL 1594403, *2 (C.D. Cal. Jun. 10, 2005).

As discussed below, the settlement presented here meets these standards.

### 1.   *The Class Greatly Benefits from the Settlement Sum and Paycom's Changing Its Employment Practices*

The first factor for assessing preliminary approval is the "extent and type of

---

[8] This factor is not analyzed because no there are no related lawsuits.

[9] This motion structures around these factors, which do not significantly depart from the factors often previously used by California district courts at preliminary and final approval. *See In re Tableware Antitrust Litigation,* 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (reviewing at the preliminary approval stage whether the settlement: (1) is the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.); *Hanlon*, 150 F.3d at 1019 (assessing at final approval: "the strength of the plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the … settlement").

benefits that the settlement will confer on the members of the class."

First, Paycom has agreed to a $1.5 million non-reversionary settlement, with $980,000 allocated to the Class, exclusive of PAGA penalties.

Second, Paycom has agreed to reclassify its Sales Professionals during its training program[10] and during Covid-19 stay-at-home orders in California (SA § 3.06(a)) on top of changing its policies and practices related to the time that their California Sales Professionals spend away from its place of business so that they will be properly classified exempt.  (SA § 3.06(b).)  This is of tremendous value to all current employees, who are 43 of the Class Members.  (Trembley Decl. ¶ 9.)

Third, Paycom revised or abandoned its at-issue policies and agreements so that current and former employees are no longer constrained by their illegality. (Curtis Decl. ¶ 27; SA § 3.06(c).)  And the PAGA notice that will go to all Paycom's California employees who worked during the PAGA period notifies them of these changes and directs them to the applicable sections of the California Labor Code if they want to understand their rights better.   (SA § 3.06(d); Ex. 1C.)  This is hugely important because:

> [e]mployees, having no reason to familiarize themselves with the specifics of California's employment law, will tend to assume that the contractual terms proposed by their employer . . . are legal, if draconian. Furthermore, even if they strongly suspect that a . . . clause is unenforceable, such employees will be reluctant to challenge the legality of the contractual terms and risk the deployment of [the employer's] considerable legal resources against them.  Thus, the *in terrorem* effect of the Agreement will tend to secure compliance with its illegal terms in the vast majority of cases.

*Latona v. Aetna U.S. Healthcare Inc.*, 82 F. Supp. 2d 1089, 1096 (C.D. Cal. 1999).

All these reasons support granting preliminary approval.

### 2.    *Unclaimed Funds Will Be Sent to the State Controller Unclaimed Property Fund to Be Held for the Class Member*

This factor supports preliminary approval because the settlement is non-

---

[10] This is particularly significant because on average Sales Professionals eight weeks in training makes up 33% of their total employment for terminated employees and 15% for current employees. (Trembley Decl. ¶ 9.)

reversionary, meaning Paycom will actually pay out the entire $1,500,000.  *Minor v. FedEx Office & Print Servs., Inc.*, 2013 WL 503268, *4 (N.D. Cal. Feb. 8, 2013) ("reversionary clauses often raise concerns about whether the settlement is in the best interests of the class.").  The Settlement Agreement provides for the Settlement Administrator to send undeliverable class payments to the State of California's State Controller Unclaimed Property Fund, where they will be held for future collection. (SA § 3.03; 3.07(f).)  But, before that happens, the Settlement Administrator will have gone through the extensive measures to try to get the settlement payments to the Class Members, as discussed below in Section IV(B)(2).

### 3.    *The Gross Settlement Amount Recovers a Significant Percentage of the Potential Damages Despite Considerable Risks*

The third factor of comparing the "likely range of litigated outcomes" to the "risks that might attend full litigation" also supports preliminary approval.

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' *expected* recovery balanced against the value of the settlement offer."  *Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080 (emphasis added).  "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."  *Offs. for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). As the Ninth Circuit further explained: "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625; accord *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998).  Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation. *Andrew Potter v. Big Text Trailer Mfg., Inc.,* 2020 WL 1942619, at *4 (C.D. Cal. Mar. 2, 2020).  "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *City of*

-17-                                2:19-cv-8994- AS

*Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 (2d Cir. 1974).

Furthermore, it is the Class's estimated compensatory damages that should be weighed against the value received by the settlement. *E.g.*, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (noting that courts determine the fairness of class action settlement based on how it compensates for past injuries).  To consider penalties or other punitive measures, presupposes that the plaintiff prevails at the end of trial, which undercuts the point of a negotiated resolution. *See Id.*

Class Members' compensatory damages for owed overtime (and interest) totals approximately $7,809,666 assuming 15 hours of overtime per week of overtime across Class Members' 11,574 workweeks during the Class Period.[11]  (Trembley Decl. ¶ ¶ 9, 12.)  Thus, the guaranteed gross settlement amount of $980,000 (separate and apart from the $520,000 allocated to the PAGA claim) is about 13% of the amount of all damages through the settlement class period.[12]  (*Id.* at ¶¶ 9, 15.)  Moreover, if the Court were to grant the full deductions that Class Counsel and Plaintiff plan to request, about $719,332 will actually be distributed to the Class Members, for an average of about $3,996 per class member, and a guaranteed 9.2 cents on the dollar

---

[11] As explained further in the Trembley declaration, years in which employees earned more than half of their compensation from commissions were not included in this figure because they would be exempt under California's inside sales exemption.

[12] It is appropriate to consider the gross award (*before* deductions) in comparing the litigation value against the settlement award.  First, if this was a single-plaintiff case, there would be a contingency agreement, and a contingency-fee plaintiff normally pays a percentage of any award to his or her counsel *regardless of fee shifting.* Second, fees are paid out of common funds even in fee-shifting cases, "to avoid the unjust enrichment of those who benefit from the fund that is created, protected, or increased by litigation and who otherwise bear none of the litigation costs."  *Sobel v. Hertz Corp.*, 2014 WL 5063397, *5 (D. Nev. Oct. 9, 2014).  Third, even if this case proceeded to judgment, and plaintiff was entirely successful, it is likely that, while some portion of plaintiff's fee would be paid directly by defendant, other portions would *still* be paid out of the common fund.  *Id.* at *8; *Savani v. URS Prof'l Sols. LLC*, 2014 WL 172503, *9 (D.S.C. Jan. 15, 2014).

MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT; MEMO OF POINTS AND AUTHORITIES

recovery.  (*Id.*)  The range of recoveries are between $17,812 and $124.  (*Id.* at ¶ 16.)

If the litigation were to go forward rather than settle, Plaintiff would seek to establish recover the owed overtime, interest, and potentially implicated penalties but he would face considerable risk in doing so, as discussed below.

    a.    <u>Misclassification Claims</u>

        ***i.   Overtime***

Plaintiff's First Cause of Action seeks the overtime wages owed to Sales Professionals who Paycom misclassified as exempt.  The Ninth Cause of Action extended the recovery period of the Class back to four years before the Complaint was filed pursuant to Business and Professions Code section 17200 *et seq*.[13]

"[A]n outside salesperson is one who customarily and regularly works more than half the working time away from the employer's business selling tangible or intangible items…."  *Duran, supra,* 59 Cal.4th at 31.  Paycom's stated schedule splits the business hours each week in half between office (Mondays, Fridays and half of Tuesdays) and outside sales work (half of Tuesdays, Wednesdays and Thursdays).  Plaintiff would argue that under Paycom's schedule, even if the Sales Professionals had as many outside meetings as hoped for—which is very rare—any work at home—which is very common—means they spend the majority of their time working in the office.  E.g., 29 CFR § 541.502 (home office is an employer's place of business for outside sales exemption).  Plaintiff would also contend that the entire eight-week training was non-exempt work.  *Harris v. Vector Marketing Corp.*, 656 F. Supp.2d

---

[13] Although, Plaintiff believes he would prevail in class certification, court have noted the significance of this risk in approving a settlement.  *Andrew Potter*, 2020 WL 1942619, at *3 (noting that the "Plaintiff recognizes that Defendants would have vigorously contested class certification [and] acknowledges that the costs and risks to the parties of further litigation included a possible determination that the claims were unsuitable for class treatment, appeals, and the possibility of no recovery, as well as the costs associated with trial.");  SA § 2.01 (noting that Paycom stipulates to certification only for the purpose of the settlement).

1128,1142-1143 (N.D. Cal. 2009) (time spent in training not outside sales under the FLSA).  Paycom, however, will contend that work done at home was rare and all work done to earn commissions on outside sales and specialized sales training are job duties that meet the exemption.  See *Barnick v. Wyeth*, 522 F. Supp. 2d 1257, 1263 (C.D. Cal. 2007).  Plaintiff believes he has the better argument on the realistic expectations of the job (*Duran, supra,* at 52), but there is risk to this position.[14]

### ii.    *Related Penalties*

While Plaintiff likes his chances to recover damages, he would face a whole other series of hurdles to establish that Paycom must pay penalties on top of the amounts that would have been owed for its alleged transgressions.

Plaintiff's second cause of action is for waiting time penalties under section 203.  Paycom would seek to bar those penalties based on its "good faith" defense.  *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008).  Paycom would have considerable case law to support its position.  *See Reber v. AIMCO/Bethesda Holdings, Inc.,* 2008 WL 4384147 at *9  (C.D. Cal. Aug. 25, 2008) ("genuine issue of material fact exists as to whether [plaintiffs] are [properly classified as] administrative employees" prevents penalties under Section 203.");  *Topete v. Red Robin Int'l, Inc.*, 2018 WL 5917905 at *3 (C.D. Cal. Aug. 30, 2018) (refusing plaintiff's section 203 claim stemming from his alleged misclassification because the employer had a "good faith defense").

Plaintiff's Third Cause of Action is for statutory penalties under Labor Code section 226 for failure to provide accurate wage statements.  Recovery of these penalties may also be difficult because Plaintiff will have to show that the violations were knowing and intentional.  *Raines v. Coastal Pac. Food Distribs., Inc.*, 23 Cal.

---

[14] There is also some risk that Paycom could establish that, at least, some of the Sales Professionals meet the administrative exemption.  Many cases have applied that exemption to sales employees.  *E.g.*, *D'Este v. Bayer Corp*, 492 Fed. Appx. 721 (2012); *Miranda v. Citibank, N.A.*, 2009 WL 10673988 (C.D. Cal. Aug. 3, 2009).

MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT;
MEMO OF POINTS AND AUTHORITIES

App. 5th 667, 680 (2018).  Paycom will also be able to cite case law against the imposition of section 226 penalties under these circumstances.  *Stafford v. Brink's, Inc.,* 2014 WL 12586066, at *5 (C.D. Cal. Aug. 5, 2014) ("many courts have held that the employer's good faith belief that it is not in violation of § 226 precludes a finding of a knowing and intentional violation.").

For these reasons, and because the 9th Circuit directs that the determination of class action settlements should measure the recovery against the injury—not potentially applicable penalties (*Rodriguez*, 563 F.3d at 964)—Plaintiff neither includes the potential penalty amounts in his calculations above nor does the Settlement Agreement provide additional compensation to the former Sales Professionals who could assert a section 203 claim.

### b.    The Agreement/Policy Class Claims

Plaintiff's Fourth through Eighth Causes of Action and part of the Ninth Cause of Action seek declaratory and/or injunctive relief to make Paycom's policies and agreements comply with the law.  Plaintiff obtained exactly the relief sought in these claims in that he negotiated revisions to the applicable documents (or Paycom abandoned the illegal provisions altogether) with Paycom as part of the settlement agreement.  (SA § 3.06(c); Curtis Decl. ¶ 27.) Thus, the settlement of these claims attains the equivalent of 100 cents on the dollar.

### 4.    *Plaintiff Performed the Necessary Discovery to Assess and Resolve this Case*

In assessing this factor, courts evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney,* 151 F.3d at 1239; *accord Andrew Potter*, 2020 WL 1942619, at *5 (factor met where counsel "reviewed and analyzed thousands of pages of data and documents, interviewed Plaintiff and other Class Members, and met with Defendants on numerous occasions").  If they do, then "the recommendations of plaintiff's counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.*, 559 F.

---

Supp. 2d 1036, 1043 (N.D. Cal. 2008). Indeed "where a class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair." *Cicero v. DirecTV, Inc*., 2010 WL 2991486, at *3 (C.D. Cal. July 27, 2010).

Here, Plaintiff conducted an independent investigation, formal discovery, and informal discovery in connection with the two mediations. As part of the independent investigation, Plaintiff interviewed Class Members and confirmed the similarity of their experiences. (Curtis Decl. ¶¶ 10, 13.) Plaintiff served three rounds of discovery. Extensive meeting and conferring was then required to get the answers Plaintiff needed to assess the case. Plaintiff obtained the relevant policies and agreements, job descriptions, wage statements, and pay data needed. He worked with his counsel and its data expert to value the claims. (Curtis Decl. ¶ 35.) The parties were well-situated to resolve the case at the second mediation. This factor too is met.

### 5. *The Settlement Leaves the Award of Attorneys' Fees to the Court's Discretion*

The requested attorneys' fees is the final consideration. This factor supports preliminary approval here because Plaintiff's counsel only intends to seek the 25% benchmark in the Ninth Circuit, or $375,000, although courts often award higher amounts in wage and hour litigation like this. *Hanlon,* 150 F.3d at 1029; *Cicero,* 2010 WL 2991486, at *6 ("courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in … a common fund under $10 million.").

Counsel has billed 485 hours on this case to date. (Curtis Decl. ¶ 34.) Counsel's lodestar is $348,000, so the planned request for $375,000 in fees currently equals a 1.087 multiplier. (*Id*.) There will of course still be more work on this case. Thus, the multiplier ultimately will be even less. "Multipliers ranging from one to four are frequently awarded in common fund cases…." *Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217, at *8 (N.D. Cal. July 11, 2013).

*///*

MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT;
MEMO OF POINTS AND AUTHORITIES

## C.    The Class Notice Satisfies F.R.C.P. Rule 23

The Settlement Agreement attaches the proposed Class Notice as Exhibit 1A to the Curtis Declaration.  Pursuant to F.R.C.P. 23(c)(2)(B), class members must be provided with the best notice practicable under the circumstances.

The proposed Notice satisfies the above standard.  The notice is clearly written, in plain English, and it "describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward to be heard." *Rodriguez*, 563 F.3d at 962.  In-line with best practices, the class notice also contains: Class Counsel's contact information (p. 6); direction to a website that posts the important case documents (*Id.*); instructions on how to access the case docket; (*Id.*); the date of the final approval hearing, (pp. 2, 5); individual estimated settlement recovery amounts (pp. 1, 5); instructions on how to opt out via the Exclusion Form (p. 5); and instructions on how to object to the settlement (pp. 5-6).

Under the Settlement Agreement, Paycom must provide the Claims Administrator with the name, last-known address, and email of each Class Member. (SA § 3.03.)  The Claims Administrator will then:

- Send the notice by first-class mail *and email.*  (SA § 3.03)
- "[C]heck all Class Member addresses against the National Change of Address database and … update any addresses before mailing." (*Id.*)
- Re-mail the Notice Packet to any received forwarding address.  (*Id.*)
- Perform a skip trace or mass search on LexisNexis databases, and mail the Notice Packet to any other addresses identified.  (*Id.*)

In the Claims Administrator's experience, notice distributed in by the above process is reasonable, adequate, and consistent with its past practices. (Curtis Decl. Ex. 2 ¶ 12.)

In sum, the Court should preliminarily approve the Class settlement because each of the above factors indicates that the Court will be able to grant final approval.

## D.    Resolution of the PAGA Claims also Supports Preliminary Approval

"Because a PAGA action is brought as proxy of law enforcement agencies, [t]here is no requirement that the Court certify a PAGA claim for representative

treatment like in Rule 23." *Rodriguez v. Marshalls of CA, LLC*, 2020 WL 7753300, at *7 (C.D. Cal. July 31, 2020).   "However, because a settlement of PAGA claims compromises a claim that could otherwise be brought by the state, the PAGA provides that 'court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA].'" *Id.*

### 1.    PAGA Misclassification Claims

The Complaint seeks PAGA penalties under Labor Code sections 510, 558 and 1194 (overtime) and 226.3 (wage statements) in connections with Paycom's misclassification of Sale Professionals.  These claims are derivative of the Class claims.  The Settlement allocates $20,000 of the $1 million paid to Sales Professionals for the misclassification claims to the PAGA claim. (SA Art. 1, mm.) Two percent allocation is a more than reasonable amount to allocate to a PAGA claim based on the same conduct as the Class claims.  *See e.g.*, *Contreras v. Worldwide Flight Services, Inc.,* 2020 WL 2083017, at *10 (C.D. Cal. Apr. 1, 2020) (approving PAGA allocation of $20,000 [2.14 percent of the $700,000 Gross Settlement Amount] because that was "higher than the zero to two percent range for PAGA claims approved by courts."); *In re M.L. Stern Overtime Litig.*, 2009 WL 995864, at *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 2 percent); *Hopson v. Hanesbrands, Inc.*, 2008 WL 3385452, at *1 (S.D. Cal. Apr. 13, 2009) (approving a PAGA settlement of 0.3 percent); *Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) (approving PAGA allocation of $10,000 against a settlement of $2.5 million (.4 %)); *Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011)  (approving PAGA allocation of $10,000 out of $6.9 million settlement (.1 %)).

### 2.    PAGA Agreement/Policy Claims

In connection with Paycom's agreements and policies that contain illegal forum selection, release, indemnity, non-disclosure, non-disparagement, non-compete, non-solicitation requirements, and its Likeness waiver's violating their employees' rights to privacy, Plaintiff seeks PAGA penalties for violating Labor Code sections

432.4/450, 96(k)/98.6, 232, 232.5, 925, 1102.5, and 2802/2804.  Some of these violations occurred once when the employees' signed their onboarding documents during their first pay period while others continued through each pay period of their employment.  The settlement recovers $81 per pay period, which is many times that which PAGA settlements commonly recover.  Curtis Decl. ¶¶ 38 and 39.

Paycom's revising its at-issue documents to comply with California law is perhaps also the most significant relief obtained on the PAGA agreement/policy claims. *Eisenacher v. VITAS Hospice Servs., LLC,* 2021 WL 1846574, at *2 (N.D. Cal. Apr. 2, 2021) (approving PAGA settlement where employer agreed to change its practices to comply with California law even though the employer paid only $20,000 in penalties as part of the settlement).  Here, not only did Plaintiff get Paycom to fix the problems with its policies and agreements, he also obtained $500,000 in penalties for those violations.  (SA Art. 1, jj.)

While the PAGA "is surprisingly short on specifics, and neither the California legislature, the LWDA, nor California courts have identified the appropriate standard for approval of such a settlement" (*Lourdes Lefevre v. Five Star Quality Care, Inc.*, 2021 WL 2389884, at *2 (C.D. Cal. Jan. 7, 2021)), Plaintiff will provide any additional analysis needed to confirm the appropriateness of the PAGA settlement with his Motion for Final Approval.

## VII.   <u>CONCLUSION</u>

Plaintiff respectfully moves this Court to enter the [Proposed] Orders submitted with this motion and approve the Class and PAGA settlements.

Respectfully submitted,

DATED: July 8, 2021          BAKER CURTIS & SCHWARTZ, P.C.

By: /s/ Michael Curtis_____
Chris Baker
Michael Curtis
Attorneys for Plaintiff
CAMERON ROSETTA