CHRIS BAKER, State Bar No. 181557
cbaker@bakerlp.com
MICHAEL CURTIS, State Bar No. 252392
mcurtis@bakerlp.com
**BAKER CURTIS & SCHWARTZ, P.C.**
1 California Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 433-1064
Facsimile: (415) 366-2525

Attorneys for Plaintiff
CAMERON ROSETTA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON ROSETTA (on behalf of himself and all others similar situated),<br><br>            Plaintiff,<br><br>      v.<br><br>PAYCOM SOFTWARE, INC. and PAYCOM PAYROLL, LLC,<br><br>            Defendants. | Case No. 2:19-cv-8994-AS<br><br>**MOTION FOR FINAL APPROVAL OF A CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge: Hon. Alka Sagar<br>Date:  December 14, 2021<br>Time: 10:00 a.m.<br>Ctrm: 540, Roybal |

**PLEASE TAKE NOTICE** that on December 14, 2021 at 10:00 a.m., before the Honorable Alka Sagar, located at the Roybal Federal Building U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012, Courtroom 540, Fifth Floor, plaintiff Cameron Rosetta will, and hereby does, move the Court, (1) pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an order granting final approval of the class action settlement at issue, and (2) pursuant to California Labor

Code section 2698 et seq. for an order granting approval of the settlement of the claims under the Private Attorneys' General Act (PAGA).

The deadline for filing objections to the Class Settlement was November 9, 2021. To date, no objections have been filed. No class members opted out.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities attached to this Motion, the Declarations, their Exhibits, all pleadings and papers filed herein, the arguments of counsel, and any other matters properly before the Court.


DATED:  November 30, 2021        **BAKER CURTIS & SCHWARTZ, P.C.**


By:  /s/ Michael Curtis  _____
Chris Baker
Michael Curtis
Attorneys for Plaintiff
CAMERON ROSETTA

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT; MPA

1

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................1

II.     BRIEF STATEMENT OF FACTUAL ALLEGATIONS AND CLAIMS.......1

     A.  Sales Professionals' Duties ........................................................1

     B.  Paycom's Agreements and Policies ............................................2

III.    THE CLASSES AND PAGA AGGRIEVED EMPLOYEES.........................3

IV.     PROCEDURAL HISTORY ....................................................................4

V.      SUMMARY OF THE AGREEMENT ......................................................5

VI.     CLASS NOTICE AND RESPONSES ......................................................8

VII.    ARGUMENT .......................................................................................9

     A.  Final Certification of the Classes is Appropriate for
         Settlement Purposes .................................................................9

     B.  Notice to the Class and Collective Was Provided Consistent
         with Rule 23(e) and this Court's Preliminary Approval Order .................9

     C.  The Court Should Grant Final Approval of the Settlement .........................9

         1.  Rule 23 Paragraphs (A) and (B), "The Procedural Concerns" .............10

         2.  Rule 23 Paragraphs (C) and (D), "The Substantive Review"...............12

     D.  The PAGA Settlement Should Be Approved ...........................................17

         1.  PAGA Misclassification Claims ...............................................16

         2.  PAGA Agreement/Policy Claims and Related Risks ...........................19

VIII.   CONCLUSION ..................................................................................20

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & PAGA SETTLEMENT; MPA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adoma v. Univ. of Phoenix, Inc.*,
   913 F. Supp. 2d 964 (E.D. Cal. 2012) ........................................................13

*Avina v. Marriott Vacations Worldwide Corp.*,
   2019 WL 8163642 (C.D. Cal. Oct. 25, 2019) ............................................11

*Ching v. Siemens Indus.*,
   2014 WL 2926210 (N.D. Cal. 2014) .............................................................9

*Chu v. Wells Fargo Invs., LLC*,
   2011 WL 672645 (N.D. Cal. Feb. 16, 2011) ...............................................18

*Chun–Hoon v. McKee Foods Corp.*,
   716 F.Supp.2d 848 (N.D.Cal.2010) .........................................................9, 13

*Cicero v. DirecTV, Inc.*,
   2010 WL 2991486 (C.D. Cal. July 27, 2010) .............................................15

*Contreras v. Worldwide Flight Servs., Inc.*,
   2020 WL 2083017 (C.D. Cal. Apr. 1, 2020) ...............................................18

*Edward Borelli, et al.*, v. *Black Diamond Aggregates, Inc., et al.*,
   2021 WL 5139610 (E.D. Cal. Nov. 4, 2021) ...............................................10

*Eisenacher v. VITAS Hospice Servs., LLC*,
   2021 WL 1846574 (N.D. Cal., Apr. 2, 2021).............................................20

*Franco v. Ruiz Food Prods., Inc.*,
   2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) .............................................18

*Garner v. State Farm Mut. Auto Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. 2010) ...........................................................15

*Hamilton v. Juul Labs, Inc.*,
   2021 WL 5331451 (N.D. Cal. Nov. 16, 2021)..............................17, 19, 20

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & PAGA SETTLEMENT; MPA

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................................................15

*Hartley v. On My Own, Inc.*,
   2020 WL 5017608 (E.D. Cal. Aug. 25, 2020) ......................................................15

*Hernandez & Santiago v. Dutton Ranch Corp.*,
   2021 WL 5053476 (N.D. Cal. Sept. 10, 2021) ......................................................19

*Hopson v. Hanesbrands, Inc.*,
   2008 WL 3385452 (S.D. Cal. Apr. 13, 2009) ......................................................18

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...................................................................................10

*In re Global Crossing Secs. and ERISA Litigation*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................16

*In re Google LLC Street View Elect. Commc'ns Litig.*,
   --- F.Supp.3d ---- 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .........................13

*In re LDK Solar Sec. Litig.*,
   2010 WL 3001384 (N.D. Cal. July 29, 2010) ......................................................12

*In re M.L. Stern Overtime Litig.*,
   2009 WL 995864 (S.D. Cal. Apr. 13, 2009) ........................................................18

*In re Omnivision Technologies*,
   559 F.Supp.2d 1036 (N.D. Cal. 2008).....................................................................8

*Iskanian v. CLS Transportation Los Angeles, LLC*,
   59 Cal.4th 348 (2014)............................................................................................17

*Kim v. Reins Int'l California, Inc.*,
   9 Cal.5th 73 (2020)................................................................................................17

*Lazarin v. Pro Unlimited, Inc.*,
   2013 WL 3541217 (N.D. Cal. 2013)......................................................................16

*Lemus v. H& R Block Enters., LLC*,
   2012 WL 3638550 (N.D. Cal. Aug. 22, 2012)........................................................9

*Lilly v. Jamba Juice Co.*,
  2015 WL 2062858 (N.D. Cal. May 4, 2015) ........................................................14

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ...............................................................11, 14

*Lourdes Lefevre v. Five Star Quality Care, Inc.*,
  2021 WL 2389884 (C.D. Cal. Jan. 7, 2021) ........................................................17

*Minor v. FedEx Office & Print Services, Inc.*,
  2013 WL 503268 (N.D. Cal. 2013) ....................................................................15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004).........................................................................8

*Norcia v. Samsung Telecomms. Am., LLC*,
  2021 WL 3053018 (N.D. Cal., July 20, 2021) ....................................................13

*Ochinero v. Ladera Lending, Inc.*,
  2021 WL 2295519 (C.D. Cal. Feb. 26, 2021) .....................................................11

*O'Connor v. Uber Techs., Inc.*,
  201 F.Supp.3d 1110 (N.D. Cal. 2016)................................................................17

*Rodriguez v. Marshalls of CA, LLC*,
  2020 WL 7753300 (C.D. Cal. July 31, 2020) ...............................................17, 20

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) .........................................................................9, 14

*Sandoval v. Tharaldson Emp. Mmgt.*,
  2010 WL 248346 (C.D. Cal. June 15, 2010)..........................................................9

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ........................................................................10, 16

*Stovall-Gusman v. W.W. Granger, Inc.*,
  2015 WL 3776765 (N.D. Cal. June 17, 2015) ....................................................12

*True v. American Honda Motor Co.*,
  749 F.Supp.2d 1052 (C.D. Cal. 2010)................................................................11

*Villegas v. J.P. Morgan Chase & Co.*,
  2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ........................................................12

*Willner v. Manpower*,
  2015 WL 3863625 (N.D. Cal. 2015) ........................................................8


**Statutes and Rules**

California Labor Code § 203 ........................................................14

California Labor Code § 226 ........................................................14

California Labor Code §§ 510, 558, 1194, 201, 202, 203, 226, and 226.3 ...............7

California Labor Code §§ 510, 1194 ........................................................14

California Labor Code §§ 2698 *et seq.* ................................................ *passim*

Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23 ........................................................9, 10

F.R.C.P. Rule 23(e) ........................................................9

F.R.C.P. Rule 23(e)(1) ........................................................9

F.R.C.P. Rule 23(e)(2) ........................................................10

F.R.C.P. Rule 23(e)(2)(A) ........................................................10

F.R.C.P. Rule 23(e)(2)(B) ........................................................11

F.R.C.P. Rule 23(e)(2)(C) ........................................................12, 13

F.R.C.P. Rule 23(e)(3) ........................................................13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On October 18, 2019, Plaintiff Cameron Rosetta filed this action against defendants Paycom Software, Inc. and Paycom Payroll LLC (collectively "Paycom"). Plaintiff asserted class and PAGA claims that generally alleged Paycom (1) unlawfully treats its California-based "Sales Professionals" as exempt from California's overtime laws; and (2) requires its Sales Professionals and other California-based employees to sign and comply with agreements and policies that violate California law.

In exchange for a release tailored to the facts and claims, Paycom has agreed to (1) pay a non-reversionary, common fund, settlement of $1,500,000, (2) reclassify its Sales Professionals as non-exempt under some circumstances and otherwise revise the time they work outside the office, and (3) revise its other at-issue policies and agreements.  The monetary component of the settlement allocates one million dollars to the Class and PAGA misclassification claims.  Five hundred thousand dollars is allocated to the PAGA Contract/Policy Claims.  The gross Class settlement amount gets the Class approximately 13 cents on the dollar for their compensatory damages. The gross PAGA settlement recovers over $81 per pay period.  Importantly, the settlement recovers 100 percent of the desired injunctive relief based on the reclassification, changed job duties, and revised policies and agreements.

The Court conditionally certified the Rule 23 Class and preliminarily approved this settlement on August 13, 2021.  [Dkt, 67.]  Plaintiff now requests that the Court grant final approval of the Rule 23 class action settlement and the PAGA settlement.

## II.    BRIEF STATEMENT OF FACTUAL ALLEGATIONS AND CLAIMS

### A.    Sales Professionals' Duties

Paycom makes and sells cloud-based human resource and payroll solutions. Paycom has multiple sales offices in California that it typically staffs with a sales team comprised of a sales manager and around six to eight "Sales Professionals."

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & PAGA SETTLEMENT; MPA

(Declaration of Cameron Rosetta in support of Motion for Preliminary Approval ["Rosetta Decl."] ¶ 5.[1])  During their initial eight weeks, Sales Professionals spend at least four hours each day, four days a week training.  (Declaration of Michael Curtis in support of Motion for Preliminary Approval ["Curtis Decl."] ¶ 39.[2])  When not engaged in the training program, Sales Professionals spend the rest of their first eight weeks doing cold calling and office work.  They rarely, if ever, leave their offices to do outside sales work.  (Rosetta Decl. ¶ 7.)

Following the training program, Plaintiff alleges that Paycom expects its Sales Professionals to arrive at the sales office between 7:00 and 8:00 a.m., and leave the sales office after 6:00 p.m.  (Rosetta Decl. ¶ 8.)  On Mondays and Fridays, Paycom expects its employees to work at the sales office.  (*Id.*)  On Tuesdays, Paycom expects its employees to work at least half the business day in the sales office.  (*Id.*)  On Wednesdays and Thursdays, Paycom states employees should spend the business day (between 9:00 and 5:00) outside the sales office.  (*Id.*)  Paycom also expected employees to work outside business hours at home.  (Rosetta Decl. ¶ 8.) As a result, Plaintiff worked overtime throughout his Paycom employment, estimating that he worked 55 hours or more per week.  (*Id.* at ¶ 6.)  Plaintiff's counsel's interviews of putative class members confirms that the other Sales Professionals also typically work 55 to 60 hours a week.  (Curtis Decl. ¶ 13.)

Plaintiff alleged claims for overtime wages and resulting statutory penalties in his first three causes of action and a related PAGA claim.

## B.    Paycom's Agreements and Policies

As a condition of initial and continued employment, Paycom requires

---

[1] Cameron Rosetta's Declaration in support of the Motion for Preliminary Approval is also attached to the Declaration of Michael Curtis in support of the Motion for Final Approval ("Final Approval Decl.") as Exhibit 6.  (Final Approval Decl. ¶ 2.)

[2] An excerpt from the Declaration of Michael Curtis in support of the Motion for Preliminary Approval is also attached to Final Approval Decl. as Exhibit 5. (Final Approval Decl. ¶ 2.)

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT; MPA

employees to sign and comply with agreements and policies that Plaintiff alleges violate California law.  Briefly, Paycom's:

- Video, Photo and Recording Release and Waiver (Rosetta Decl. Ex. 1), required employees to release their likenesses for Company/non-Company uses in perpetuity and contained an illegal choice of law provision;

- Code of Ethics and Business Conduct for Officers, Directors and Employees (*Id.* Ex. 2), imposed illegal confidentiality obligations and speech restrictions;

- Insider Trading Policy (*Id.* Ex. 3), also imposed confidentiality obligations and speech restrictions contrary to California law;

- Employee Confidentiality, Non-Disparagement, Non-Disclosure, Proprietary Information and Indemnification Agreement (*Id.* Ex. 4), imposed confidentiality, speech, and indemnity obligations contrary to California law and illegal choice of law and forum selection provisions;

- California Addendum to its Employee Handbook (*Id.* Ex. 5) imposed confidentiality obligations and speech restrictions contrary to law; and

- Non-Solicitation Agreement (*Id.* Ex. 6) imposed confidentiality and indemnity obligations contrary to California law and illegally forbid employees from soliciting customers, referral sources, etc., and contained illegal choice of law and forum selection provisions.

Plaintiff sought class-wide declaratory/injunctive relief and PAGA penalties arising from these illegal agreements and policies.

## III.    THE CLASSES AND PAGA AGGRIEVED EMPLOYEES

The Class Members "are defined as all current and former California Sales Representatives and Executive Sales Representatives of Defendants classified as exempt outside sales professionals during the Covered Period."  (Curtis Decl. Ex. 1, Article I(g).)  The Class Period starts on October 18, 2015 and continued to February 28, 2021.  There are 180 Class Members.  (*Id.* at ¶ 29.)

There are also two groups of aggrieved employees under the PAGA claim. There are 107 PAGA Misclassification Aggrieved Employees who are a subgroup of the Class Members, limited to the shorter PAGA Period of October 18, 2018 to February 28, 2021.  (*Id.* at ¶ 37; Ex. 1, Article I(oo).)  There are 226 PAGA

1  Contract/Policy Aggrieved Employees who constitute all current and former

2  California employees during the PAGA Period.  (*Id.* at ¶ 37; Ex. 1, Article I(kk).)

3  **IV.  PROCEDURAL HISTORY**

4          On December 31, 2019, Plaintiff filed his First Amended Complaint adding

5  the PAGA claim. [Dkt. #18].  Paycom answered on January 30, 2020 [Dkt. #24],

6  which was followed by a meet and confer process about the propriety of Paycom's

7  alleged affirmative defenses.  Paycom filed an amended answer removing some of

8  its alleged defenses [Dkt. #33] and Plaintiff moved to strike additional defenses

9  [Dkt. #34].  The Court denied Plaintiff's motion.  [Dkt. #45] (Curtis Decl. ¶ 8.)

10          On February 14, 2020, the parties served their initial disclosures and Plaintiff

11  served his first set of discovery requests.  On April 24, 2020, the parties entered a

12  joint stipulation for protective order for informal mediation discovery [Dkt. #46],

13  which the Court entered on April 27, 2020.  (Curtis Decl. ¶ 9.)

14          During this period, the parties were negotiating arrangements for a mediation.

15  (*Id.*)  After the protective order was entered, Paycom provided documents and

16  information to Plaintiff – including payroll data – in furtherance of mediation.  (*Id.*

17  at ¶ 10.) Plaintiff, with the aid of a data analyst, modeled Paycom's exposure.  The

18  parties first attempted mediation with the Honorable Wynne Carvill on July 9, 2020.

19  (*Id.*) That mediation did not result in a settlement.  (*Id.*)

20          The parties then resumed discovery—serving new requests and responses and

21  working towards resolving discovery disputes.  (*Id.* at ¶ 11.)  During this time, the

22  parties also made arrangements for a second mediation.  (*Id.*) Armed with the new

23  information provided through discovery, and after further analysis, they reached a

24  settlement in principle in a mediation with Steve Pearl on November 5, 2020.  (*Id.*)

25  Over the next seven months, further negotiations over the terms of the settlement

26  resulted in a signed Memorandum of Agreement followed by a finalized long-form

27  settlement agreement.  (*Id.*)  The negotiations also included programmatic relief,

28  e.g., the changes to Paycom's business practices, agreements, and policies.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT; MPA

Plaintiff moved for preliminary approval on July 8, 2021.  [Dkt. 62.]  On August 13, 2021, the Court held a hearing on Plaintiff's motion, conditionally certified the Rule 23 Class, and preliminarily approved this settlement.  [Dkt, 67.]  The Court approved the form of notice to the class and the procedures for providing notice.  (*Id.* at ¶¶ 3, 10-11.)  The Claims Administrator's declaration in support of final approval is attached to the Declaration of Michael Curtis ("Final Approval Declaration") as Exhibit 1, which establishes compliance with the Court's orders on notice.  Finally, the Court established a schedule for the case going forward, with an objection deadline of November 9, 2021, Plaintiff's deadline for filing the motion of November 30, 2021, and a Final Fairness Hearing set for December 14, 2021.  (*Id.* at ¶¶ 11, 13).

## V.    **SUMMARY OF THE AGREEMENT**

The parties' Settlement Agreement ("SA" or "Agreement") is attached to the Curtis Declaration in support of Preliminary Approval as Exhibit 1.  As mentioned above, the Agreement requires Paycom to pay $1,500,000 into a non-reversionary settlement fund, labeled the Gross Settlement Amount.  (SA § 3.07(a).)  It also requires Paycom to separately pay its employer's share of related payroll taxes.[3] (SA § 3.02.)

The Gross Settlement Amount is allocated three ways: (1) the $980,000 payment to Participating Class Members (meaning those who do not opt-out) for the release of their class claims (the "Class Payment"), (2) the $20,000 PAGA Misclassification Settlement Payment to the State and the PAGA Misclassification Aggrieved Employees, and (3) the $500,000 PAGA Contract/Policy Settlement Payment to the State and the PAGA Contract/Policy Aggrieved Employees. (SA § 3.07(d) (1-3).)  Each payment is subject to a prorated share of any deductions from

---

[3] Payroll taxes (at least for Social Security) directly benefit the class.  The amount contributed to Social Security correlates with the amount of money the employee will eventually receive.  *See,* SOCIAL SECURITY, UNDERSTANDING THE BENEFITS (2015) at 8-9 (http://www.ssa.gov/pubs/EN-05-10024.pdf).

the Gross Settlement that the Court approves.  (SA, Article 1 ¶¶ h, mm, jj.) Plaintiff
files his Motion for Fees, Costs and Service Enhancements herewith, requesting: (1)
attorney's fees and costs of $375,000 (the benchmark 25% of the gross settlement),
(2) an enhancement award for Plaintiff of $5,000, and (3) litigation costs of
$10,101.07.  The settlement agreement provisions setting forth this distribution plan
are found at Art. 1 ¶ mm; and ¶¶ 3.07(d)(1), (2) and (3).

Along with the monetary component, Paycom agreed to <u>permanently</u>
reclassify its California Sales Professionals as non-exempt employees while they are
engaged in the Startline training program and during Covid-19 stay-at-home orders
in California.  (SA § 3.06(a).)  Paycom also agreed to change certain policies and
practices related to the time that their California Sales Professionals spend away
from its place of business, their job descriptions and duties, and other issues
affecting its classification of exempt outside salespersons.  (SA § 3.06(b).)  Paycom
further agreed to abandon its non-solicitation and trade secret agreements as well as
adopt new employment agreements and policies for use in California, including its
employee handbook, code of conduct, insider trading agreement, NDA, and
"Likeness Waiver."  (SA § 3.06(c); Curtis Decl. ¶ 27).  Finally, the PAGA notice
that will go to all Paycom California employees who worked during the PAGA
Period informs them that they are no longer subject to Paycom's prior policies and
agreements, that new policies and agreements have been adopted, and directs them
to the applicable sections of the Labor Code if they want to better understand their
rights.  (SA § 3.06(d); Ex. 1C.)

In exchange, Participating Class Members will release:

all causes of action that were alleged in the operative complaint or
reasonably could have been alleged based on the facts and legal theories
contained in the operative complaint, including all of the following
claims for relief: (a) failure to pay overtime wages due; (b) failure to
provide complete and accurate wage statements; (c) waiting time
penalties that could have been premised on the claims, causes of action
or legal theories of relief described above or any of the claims, causes of

action or legal theories of relief pleaded in the operative complaint; (d) unfair business practices that could have been premised on the claims or legal theories of relief described above or any of the claims, causes of action or legal theories of relief pleaded in the operative complaint, including but not limited to the contractual claims arising out of defendant's use of certain employment agreements and policies, as alleged in the operative complaint; (e) all claims under the California Labor Code Private Attorneys General Act of 2004 ("PAGA") for violations of Labor Code sections 510, 558, 1194, 201, 202, 203, 226, and 226.3, which could have been premised on the claims or legal theories described above or any of the claims, causes of action or legal theories of relief pleaded in the operative complaint; and, (f) any other claims or penalties under the wage and hour laws pleaded in the Action, except that the Release under PAGA is limited to the Labor Code sections identified in subdivision (e) above; and (g) all damages, penalties, interest and other amounts recoverable under said claims, causes of action or legal theories of relief.

(SA § 4.01.)  The period of the Release will extend to the limits of the Covered Period, except that the PAGA claims are limited to the PAGA Period.  (*Id.*)[4]

Plaintiff and the PAGA Contract/Policy Aggrieved Employees release all claims under the California Labor Code Private Attorneys General Act of 2004 for violations of Labor Code sections 432.5, 450, 96(k), 98.6, 232, 232.5, 1102.5, 1197, 2802, 2804, and 925, which could have been premised on the claims, causes of action or legal theories of relief pleaded in the operative complaint.  The period of the Release shall extend to the limits of the PAGA Period.  The PAGA Contract/Policy Released Claims are also released as part of the Settlement Class Released Claims but are broken out separately because they are the only claims released by the PAGA Contract/Policy Payment Aggrieved Employees who are not also Class Members.  (SA § 4.01.)

---

[4] This motion does not discuss the separate *PAGA Misclassification Claims Release* because no class members opted out so the class member release applies to all those aggrieved employees.

# VI.    CLASS NOTICE AND RESPONSES

Consistent with the Agreement, Paycom provided data and contact information to the Claims Administrator.  As explained in its representative's declaration (Nancy Johnson) in support of final approval, the Claims Administrator updated the contact information and finalized the notices.  (Final Approval Decl., Ex. 1, ¶¶ 4-5.)

On September 10, 2021, the Claims Administrator mailed all 180 Class Members their notice packets, and emailed 179 Class Members their notice packets on September 16. (*Id.* at ¶ 6b-c.)[5] The notice packets set forth the Class Members' options, relevant deadlines, and their estimated payouts.  (*Id.* at ¶ 6b.) The notice packets also referred Class Members to Class Counsel's contact information, contact information for the Claims Administrator, and the webpage for Central District of California to examine the pleadings from this action or if they had questions about the case.  (*Id.* Ex. #, ex. 1, p. 6.)  Class Counsel, for its part, established a webpage dedicated to the settlement members, which included the settlement agreement, court filings and important dates.  (*Id.*); *See* (https://bakerlp.com/paycom-class-action-settlement); Final Approval Decl. Ex. 2.)

Out of the 180 notices sent, 16 were returned as undeliverable.  (Final Approval Decl. Ex. 1, ¶¶ 8-9.) The Claims Administrator was able to obtain 14 updated addresses and re-sent notices to those addresses.  (*Id.*)  Only two of the 180 notices were not delivered, meaning that about 99% received notice. (*Id.* at ¶ 9.) No persons requested exclusion from the Settlement or objected to it.[6]  (*Id.* at ¶¶ 10-11.)

---

[5] Paycom did not have an email address on file for at least one class member.  (Final Approval Decl. ¶ 9.) The notices were emailed by later than the mailing due to an administrative oversight.  (*Id.*)

[6] "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Omnivision Technologies,* 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008); *Willner v. Manpower,* 2015 WL 3863625, *5 (N.D. Cal. 2015) (no objections and .06% exclusions "weighs strongly in favor of approval"); *Chun–Hoon v. McKee Foods Corp.,* 716 F.Supp.2d 848, 851 (N.D.Cal.

1  To date, no one has expressed any opinion against the Settlement.  (Final Approval

2  Decl., ¶ 4.)

3  **VII.  ARGUMENT**

4      **A.    Final Certification of the Classes is Appropriate for Settlement**

5          **Purposes**

6        In its Preliminary Approval Order [Dkt. # 67], the Court preliminarily certified

7  the Class for Settlement Purposes, finding that the parties' Settlement Agreement

8  "falls within the range of reasonableness for settlement and that the Court will likely

9  be able to certify the proposed class, therefore, the Settlement Agreement meets the

10  requirements for preliminary approval under F.R.C.P. 23(e)(1) such that notice to the

11  Class is appropriate." (*Id.* at ¶¶ 3 and 5.)  Nothing has happened since the Court

12  entered its Preliminary Approval Order to disturb this ruling.  Accordingly, final

13  certification of the Classes and Collective for settlement purposes is appropriate.

14  *Ching v. Siemens Indus.*, 2014 WL 2926210, *2 (N.D. Cal. 2014) (final class

15  certification appropriate based on preliminary approval order); *Sandoval v.*

16  *Tharaldson Emp. Mmgt.*, 2010 WL 248346, at *5 (C.D. Cal. June 15, 2010) (same).

17      **B.    Notice to the Class and Collective Was Provided Consistent with**

18          **Rule 23(e) and this Court's Preliminary Approval Order**

19        The Court's Preliminary Approval Order set forth the form and manner of

20  notice to the Class and Collective.  (Dkt # 67, ¶¶ 9-12.)  As explained above, notice

21  has been provided consistent with the Court's Order.  At a minimum, the notice

22  provided to the class, "describes the terms of the settlement in sufficient detail to alert

23  those with adverse viewpoints to investigate and come forward to be heard."

24  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).  It therefore

25  satisfies Rule 23 and due process requirements.  *Lemus v. H& R Block Enters., LLC*,

26  2012 WL 3638550, *4 (N.D. Cal. Aug. 22, 2012).

27

28
      2010) (finding that 4.86% opt-out rate strongly supported approval).

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT; MPA

### C.    The Court Should Grant Final Approval of the Settlement

In considering a motion for final approval, "it is the settlement taken as a whole, rather than its individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety."  *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003).  That said, Rule 23, "directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal."  Fed. Rules Civ. Proc., Rule 23, Committee Notes on Rules—2018 Amendment ("Advisory Committee Notes"). The factors to consider in determining whether a settlement is "fair, reasonable and adequate" under Rule 23(e)(2) are whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate (including sub-considerations discussed below); and

(D) the proposal treats class members equitably relative to each other.[7]

#### 1.   <u>Rule 23 Paragraphs (A) and (B), "The Procedural Concerns"</u>

**As required by Rule 23(e)(2)(A), Plaintiff Cameron Rosetta and Baker Curtis & Schwartz have adequately represented the class**.  Plaintiff Rosetta has spent more than 45 hours working on this case.  (Rosetta Decl. ¶ 13.)  He participated in discovery, gathered documents, reviewed pleadings, contacted co-workers for interviews by his attorneys, and attended two separate mediations. (*Id*.)  Plaintiff

---

[7] This standard does not significantly depart from the factors often previously used in this district: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of proceedings; the experience and views of counsel; the presence of a government participant; the reaction of class members.  *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT; MPA

Rosetta has adequately represented the class. *See Edward Borelli, et al.*, v. *Black Diamond Aggregates, Inc., et al.*, 2021 WL 5139610, at *5 (E.D. Cal. Nov. 4, 2021) ("named plaintiffs adequately represented the class" when they "devoted dozens of hours" to the case, which included their discovery participation and helping out their counsel.)

Plaintiff's counsel has also adequately represented the class.  In deciding whether counsel adequately represented the class, courts examine if "the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Here, Plaintiff and Class Counsel achieved this settlement only after nearly two years of litigation, formal discovery, and the exchange of hundreds of documents in informal discovery. Those documents supplied Plaintiff, his experienced counsel [Dkt 67, ¶ 4], and his counsel's data analyst with class-wide metrics they used to analyze each of Plaintiff's asserted class claims for overtime, waiting time penalties, and pay statement penalties. Counsel's efforts, therefore, also support approval.  *See True v. American Honda Motor Co.* 749 F.Supp.2d 1052, 1078 (C.D. Cal. 2010) (factor supported approval where case was litigated for two years, during which class counsel reviewed "thousands of pages of relevant documents" and engaged various experts "to assist them in the review and analysis of information obtained through discovery" on top of other discovery); *Ochinero v. Ladera Lending, Inc.*, 2021 WL 2295519, at *5 (C.D. Cal. Feb. 26, 2021) (counsel adequately represented class when counsel conducted formal and informal discovery, reviewed wage-and-hour data provided by the defendant, and assessed strength of claims against defenses); *Avina v. Marriott Vacations Worldwide Corp.*, 2019 WL 8163642, at *6 (C.D. Cal. Oct. 25, 2019) (same). The adequacy of Plaintiff counsel's work is further substantiated by the fact that the settlement has resulted in no objections while putative class members have expressed their gratitude to Plaintiff and counsel for securing a settlement.  (Final Approval Decl. ¶¶ 5-7.)

**As required by Rule 23(e)(2)(B), the settlement was negotiated at arm's length.** Settlement negotiations began only after Paycom provided class counsel with the documents and data necessary to properly value the case. This factor is therefore met. (Dkt. 67 ¶ 4 ("The Court finds that the Settlement was the product of protracted, arms-length negotiations between experienced counsel…"); *see also Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (use of an experienced neutral "tends to support the conclusion that the settlement process was not collusive."); Advisory Committee Notes ("involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.").

The procedural factors for final certification have been met.

## 2. Rule 23 Paragraphs (C) and (D), "The Substantive Review"

**As required by Rule 23(e)(2)(C), the relief provided for the class is adequate.** The settlement requires Paycom to pay a non-reversionary amount of $980,000 to a common fund in exchange for the release by the class. That yields a gross recovery to the Class of approximately 13 cents on the dollar.[8] Should the Court grant the full deductions that Class Counsel and Plaintiff request, about $719,332 will actually be distributed to Class Members, for a guaranteed 9.2 cents on the dollar recovery. A 9.2 cents on the dollar actual recovery favors final approval. *In re LDK Solar Sec. Litig.*, 2010 WL 3001384, at *2 (N.D. Cal. July 29, 2010) (granting final approval where settlement was 5% of estimated damages); *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval to wage and hour settlement with net recovery valued at 7.3% of potential

---

[8] Class Members' compensatory damages for owed overtime (and interest) totals approximately $7,809,666 assuming 15 hours of overtime per week of overtime across Class Members' 11,574 workweeks during the Class Period. (Declaration of Jennifer Trembley in support of the Motion for Preliminary Approval., ¶¶ 9, 12.) Thus, the guaranteed gross settlement amount of $980,000 (separate and apart from the $520,000 allocated to the PAGA claim) is about 13% of the amount of all damages through the settlement class period. (*Id*. at ¶¶ 9, 15.)

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT; MPA

recovery).

Along with the monetary recovery for the Class, the settlement recovers 100 percent of the desired injunctive relief because Paycom has agreed to permanently reclassify its Sales Professionals as exempt during certain employment periods and change their job duties to render them otherwise exempt.  This relief also supports final approval.  *In re Google LLC Street View Elect. Commc'ns Litig.*, --- F.Supp.3d ---- 2020 WL 1288377, at *14 (N.D. Cal. Mar. 18, 2020) (secured injunctive relief weighed in favor of final approval of settlement); *Norcia v. Samsung Telecomms. Am., LLC*, 2021 WL 3053018, at *3 (N.D. Cal., July 20, 2021) ("The 3-year injunctive relief negotiated by the parties also adds to the relief to the class, and on the whole, the adequacy of relief factor weighs in favor of final approval.")

The adequacy of the relief obtained is further confirmed by Rule 23(e)(2)(C)'s sub-considerations of: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).[9]

**The costs, risks, and delay of trial and appeal are significant here.**

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun–Hoon v. McKee Foods Corp.,* 716 F.Supp.2d 848, 851 (N.D. Cal. 2010); *Adoma v. Univ. of Phoenix, Inc*., 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (courts "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements.").

Plaintiff (and Class Counsel) believes that, if this case proceeds, <u>Plaintiff</u> will ultimately prevail.  But there are considerable risks with Plaintiff's claims. Pages 19 to 21 of the motion for preliminary approval [Dkt. 62] and pages nine to ten of the

---

[9] There are no other agreements for the parties to disclose.

accompanying Declaration of Michael Curtis [Dkt. 62-1] provide a thorough claim-by-claim assessment of those risks.  Plaintiff does not repeat that analysis here based on the Court's preliminary approval of the settlement which considered these points. [Dkt. 67.]  To recap, the following would likely be the biggest challenge(s) for each alleged claim seeking monetary relief:

- Overtime under California Labor Code §§ 510, 1194: Establishing Sales Professionals work mostly outside the office and rebutting the argument that Sales Professionals qualify for the administrative exception to the overtime requirement

- Waiting time penalties under § Labor Code 203: Rebutting Paycom's good faith dispute defense;

- Penalties for failing to provide accurate wage statements under Labor Code §226: Establishing the violation was "knowing and intentional."

There would also be considerable delay and expense if the settlement is not approved.  First, the parties would need to complete a significant amount of discovery to ready the case for trial.  Settlement avoids those costs.  *Linney,* 151 F.3d at 1242. ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.").  Second, settlement provides immediate injunctive relief for Class Members and future Paycom employees which otherwise may not be attained for years. *Lilly v. Jamba Juice Co.*, 2015 WL 2062858, at *4 (N.D. Cal. May 4, 2015) ("Because this settlement will result in complete relabeling of the challenged products, continued litigation could not result in any greater injunctive relief to the class and would only deprive the class of immediate relief.")  Third, risk, delay, and burden are contrary to the financial interests of the class.  The choice then, is approve this settlement so that the class members receive at least 9.2 cents on the dollar now, or await a trial, with considerable risk, that may occur in 2022 or 2023, with appeals to likely follow.  *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 966 (9th Cir.2009) ("Inevitable appeals would likely prolong the

litigation, and any recovery by class members, for years. This factor, too, favors the settlement.") "A settlement is fair, adequate, and reasonable when the interests of the class are better served by settlement than by further litigation." *Garner v. State Farm Mut. Auto Ins. Co.* 2010 WL 1687832, *8 (N.D. Cal. 2010). Those sentiments direct the Court to approve the settlement here.

**The effectiveness of the proposed method of distributing relief to the class is high.** As an initial consideration, the settlement is non-reversionary, a factor which favors approval. *Hartley v. On My Own, Inc.*, 2020 WL 5017608, at *7 (E.D. Cal. Aug. 25, 2020) (non-reversionary settlement provision "counsels in favor of the court's approving the settlement"); *compare Minor v. FedEx Office & Print Services, Inc.*, 2013 WL 503268, *4 (N.D. Cal. 2013) ("reversionary clauses often raise concerns about whether the settlement is in the best interests of the class.")

Second, the Settlement Agreement provides that the Settlement Administrator will undertake effort to ensure Class Members receive their checks and allow ample time for Class Members to cash them. (SA § 3.07(f).) After performing a national change of address search to update and correct any known or identifiable address changes, the Claims Administrator will send the checks to Class Members.[10] Class Members will have 210 days to cash their checks. Any uncashed check will be void and the Settlement Administrator will deliver the monies represented by the uncashed check to the State of California's State Controller Unclaimed Property Fund. (SA § 3.07(f).) This factor is met too.

**The terms of the proposed award of attorney's fees favor final approval here.** Class counsel has requested the 25% benchmark in the Ninth Circuit, or $375,000, although courts often award higher amounts in wage and hour litigation of this nature. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998); *Cicero v.*

---

[10] Class Counsel was also contacted by multiple Class Members who provided updated addresses and confirmed their workweeks to ensure they receive accurate settlement payments. (Final Approval Decl. ¶ 8.)

*DirecTV, Inc.*, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) ("courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million.").  Class counsel has billed more than 536 hours on this case to date.  (Final Approval Decl. ¶ 3.)  Class counsel's current lodestar based on these hours is $381,089.50, so its request for $375,000 in fees requires no multiplier. even though multipliers up to "four are frequently awarded in common fund cases…." *Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217, *8 (N.D. Cal. 2013).  And there will still be more work on this case so Class Counsel's lodestar will continue to shrink.  Nor did the parties agree to the amount of fee award; it is left to the Court's discretion.  This too favors final approval.  Rule 23 Advisory Committee Notes ("Particular attention might focus on the treatment of any award of attorney's fees, with respect to both the manner of negotiating the fee award and its terms.").

**As required by Rule 23(e)(2)(D), the proposal treats class members equitably relative to each other.**  The net settlement fund will be divided equally among Participating Class Members (current and former California Sales Representatives and Executive Sales Representatives of Paycom) based on the number of weeks Each Participating Class Member worked during the Class Period. (SA § 3.07(d)(1).)  This is not a case of "singling out a large group of non-named plaintiff class members for higher payments without regard to the strength of their claims." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  Rather, the parties valued the different claims and ensured that class members receive settlements consistent with those values.  *In re Global Crossing Secs. and ERISA Litigation*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004).   ("When formulated by competent and experienced class counsel, an allocation plan need have only a reasonable, rational basis. . . .").

The substantive factors therefore also support final approval and such approval should be granted.

**D.    The PAGA Settlement Should Be Approved**

"Because a PAGA action is brought as proxy of law enforcement agencies, [t]here is no requirement that the Court certify a PAGA claim for representative treatment like in Rule 23." *Rodriguez v. Marshalls of CA, LLC*, 2020 WL 7753300, at *7 (C.D. Cal. July 31, 2020).   "However, because a settlement of PAGA claims compromises a claim that could otherwise be brought by the state, the PAGA provides that 'court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA].'" *Id.*   California law "is surprisingly short on specifics" as to how to review a PAGA settlement.   Federal courts have provided that a PAGA settlement should be "fair and adequate in view of the purposes and policies of the statute." *O'Connor v. Uber Techs., Inc.*, 201 F.Supp.3d 1110, 1135 (N.D. Cal. 2016) *accord*, *Lourdes Lefevre v. Five Star Quality Care, Inc.* 2021 WL 2389884 (C.D. Cal. Jan. 7, 2021) ("the Court adopts the 'fair and reasonable' standard other courts have applied to review PAGA settlements.")   The Court may look to the following factors and purposes of the PAGA statute in making this fairness analysis:

*Purposes*

>   (1) Protect workers and law-abiding employers by ensuring compliance with the State's minimum labor standards. This is done by remediating present Labor Code violations and deterring future violations by both the defendant and other employers.
>
>   (2) Collect civil penalties to enhance the State's labor enforcement capabilities and educate workers.

*Factors*

>   (3) The PAGA settlement has a rational basis given the PAGA claim's strength and value.
>
>   (4) The PAGA settlement is not collusive or unfair to those affected.

*Hamilton v. Juul Labs, Inc.*, 2021 WL 5331451, at *7 (N.D. Cal. Nov. 16, 2021); *see also O'Connor*, 201 F.Supp.3d at 1133-35; *Kim v. Reins Int'l California, Inc.*, 9

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT; MPA

Cal.5th 73, 86 (2020); *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal.4th 348, 379 (2014).  The PAGA Settlement totaling $520,000, which is comprised of a (i) PAGA Misclassification Settlement Payment and (ii) PAGA Contract/Policy Settlement Payment, should be approved in light of these considerations.

## 1. **PAGA Misclassification Claims**

The Complaint seeks PAGA penalties under Labor Code sections 510, 558 and 1194 (overtime) and 226.3 (wage statements) in connection with Paycom's misclassification of Sale Professionals. These claims are derivative of the Class claims.  The Settlement allocates $20,000 of the $1 million paid to Sales Professionals for the misclassification claims to the PAGA claim. (SA Art. 1, mm.) Two percent is a more than reasonable allocation to a PAGA claim based on the same conduct as the Class claims.  *See, e.g.*, *Contreras v. Worldwide Flight Servs., Inc.*, 2020 WL 2083017, at *10 (C.D. Cal. Apr. 1, 2020) (approving PAGA allocation of $20,000 [2.14 percent of the $700,000 Gross Settlement Amount] because that was "higher than the zero to two percent range for PAGA claims approved by courts."); *In re M.L. Stern Overtime Litig.*, 2009 WL 995864, at *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 2 percent); *Hopson v. Hanesbrands, Inc.*, 2008 WL 3385452, at *1 (S.D. Cal. Apr. 13, 2009) (approving a PAGA settlement of 0.3 percent); *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) (approving PAGA allocation of $10,000 against a settlement of $2.5 million (0.4 %)); *Chu v. Wells Fargo Invs., LLC*, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011)  (approving PAGA allocation of $10,000 out of $6.9 million settlement (0.1 %)).  On top of monetary penalties, Plaintiff also secured non-monetary injunctive relief which requires Paycom to reclassify its Sales Professionals during certain employment periods and otherwise revise the time they work outside the office.  (SA § 3.06(a)-(b).)

Thus, Plaintiff has achieved the two primary purposes of PAGA: (i) deterrence of future violations by guaranteeing employee reclassification and changed practices, and (ii) collection of civil penalties because of past misclassification.  And the PAGA

Misclassification Settlement meets both factors. It is rational given that the same risks entailed with Plaintiff's Class Misclassification claims apply to the derivative PAGA claim. What's more, it recovers more than derivative PAGA claims do in many other approved PAGA settlements. And it is neither collusive nor unfair because it was the product of negotiations between experienced counsel undertaken with the help of a neutral mediator which prompted Paycom to reclassify its employees (on top of changing their job duties and descriptions.) (SA § 3.06(a)-(b).)

## 2. PAGA Agreement/Policy Claims and Related Risks

In connection with Paycom's agreements and policies that contain illegal forum selection, release, indemnity, non-disclosure, non-disparagement, non-compete, non-solicitation requirements, and its Likeness waiver's violating their employees' rights to privacy, Plaintiff seeks PAGA penalties for violating Labor Code sections 432.4/450, 96(k)/98.6, 232, 232.5, 925, 1102.5, and 2802/2804. Some of these violations occurred once when the employees' signed their onboarding documents during their first pay period while others continued through each pay period of their employment because the illegal restrictions continue under the agreements. No matter their continuation, these PAGA claims all stem from unlawful contractual/policy provisions, rather than underlying Labor Code violations, which renders these PAGA claims unique. *See Hamilton*, 2021 WL 5331451, at *11 (N.D. Cal. Nov. 16, 2021) ("the PAGA claims in this case do not involve ordinary wage-and-hour violations – the traditional subject of PAGA claims – but rather relate to alleged violations of working conditions [such as unlawfully restricting speech and protected activity] that are harder to quantify and less commonly litigated.") In this context, courts have approved PAGA settlements which provide for (i) injunctive relief to remedy future violations and (ii) penalties. *Id*. at 11-12. Here, both factors are met.

The settlement recovers $81 per pay period ($40.50 per week), which is greater than what PAGA settlements commonly recover. *Hamilton*, 2021 WL 5331451, at *11 (approving PAGA settlement recovering $34 per pay period for very similar

claims to those alleged here); *Hernandez & Santiago v. Dutton Ranch Corp.*, 2021 WL 5053476, at *5 (N.D. Cal. Sept. 10, 2021) (approving PAGA settlement with a "gross value of approximately $24.87 per workweek"); (Curtis Decl. ¶¶ 38-39)

And as discussed above, perhaps the most significant relief obtained on the agreement/policy claims is Paycom's agreement to revise those documents to comply with California law. *Eisenacher v. VITAS Hospice Servs., LLC*, 2021 WL 1846574, at *2 (N.D. Cal., Apr. 2, 2021) (approving PAGA settlement where employer agreed to change its practices to comply with California law even though the employer paid only $20,000 in penalties as part of the settlement); *Rodriguez v. Marshalls of CA, LLC* 2020 WL 7753300, at *8 (C.D. Cal., July 31, 2020) (approving PAGA settlement of $697,000 and changed policy without "any evidence as to the maximum PAGA penalty that would be available in this action").

Here, not only did Plaintiff convince Paycom to fix the problem, he also convinced it to pay $500,000 in penalties. This significant two-part recovery favors approval of the settlement. See *Hamilton*, 2021 WL 5331451, at *12 (noting monetary recovery and "programmatic relief directly responsive" to claims in the case favored approval of PAGA claim.) In sum, the PAGA Policy/Contract Settlement satisfies the purposes and factors laid out in *Hamilton*. It should be approved.

## VIII. <u>CONCLUSION</u>

Plaintiff respectfully moves this Court to enter the [Proposed] Orders submitted with this motion and grant final approval of the Class and PAGA settlements.

Respectfully submitted,

DATED: November 30, 2021       BAKER CURTIS & SCHWARTZ, P.C.

By: /s/ Michael Curtis____
    Chris Baker
    Michael Curtis
    Attorneys for Plaintiff
    CAMERON ROSETTA

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PAGA SETTLEMENT; MPA